MAX CARASSO AND FANNIE CARASSO, PETITIONERS, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 73590. Filed September 30, 1960.

*Max Carasso, pro se.*
*John Dunkel, Esq.*, for the respondent.

1140

RAUM, *Judge:* This case involves the disallowance of $628.50 of medical expenses out of a total of a considerably larger amount claimed by petitioner. The principal component of the amount disallowed is $493.50 actually spent on a 9-day trip for convalescence after two critical operations. The trip was taken on the advice of a physician. Petitioner was in a seriously weakened condition, and the presence of his wife, who accompanied him, was indispensable. It was in no sense a vacation trip, even in part. We think that this item was deductible, apart from the hotel and meals expenses which will be discussed separately hereinafter.

Trips to resort areas are naturally suspect when the expenses therefor are claimed as a medical deduction, and we must carefully scrutinize the facts to make sure that the alleged medical reasons were not merely a pretext for a vaction trip. However, we are satisfied on this record that the trip in question was undertaken solely for medical reasons. Petitioners are quite obviously persons of comparatively modest means. Their reported adjusted gross income was $8,518.05, and their return showed no income from dividends, interest, rents, or the like. We have no doubt that, but for the seriously weakened condition of the husband, the trip, followed by further convalescence at home prior to return to work, never would have been made. We hold that the expenses of the Bermuda trip, except for hotel and meals, are deductible.

As to the hotel and meals components, however, a 1954 legislative change affected the scope of the medical deduction so as to preclude the deduction of amounts expended for meals and lodging herein. In spelling out more fully the meaning of "medical care," section 213 (e) (1) of the 1954 Code provided as follows:

(1) The term "medical care" means amounts paid—

(A) for the diagnosis, cure, mitigation, treatment, or prevention of disease, or for the purpose of affecting any structure or function of the body * * *, or

(B) for transportation primarily for and essential to medical care referred to in subparagraph (A).

This provision made clear that appropriate transportation costs were to be deductible, but by so limiting the deduction at the same time it raised the possible inference that other costs such as board and lodging were not to be deductible. That such was the intention of Congress is made plain in the committee reports. Thus, the House Ways and Means Committee report, commenting on this provision, declares (H. Rept. No. 1337, 83d Cong., 2d Sess., p. 30):

A new definition of "medical expenses" is provided which incorporates regulations under present law and also provides for the deduction of transportation expenses for travel prescribed for health, *but not the ordinary living expenses incurred during such a trip.* [Italics supplied.]

And the same report, in its "Detailed Discussion of the Technical Provisions of the Bill," explicitly states (*Ibid.*, p. A60):

The deduction permitted for "transportation primarily for and essential to medical care" clarifies existing law in that it specifically *excludes deduction of any meals and lodging while away from home* receiving medical treatment. For example, if a doctor prescribes that a patient must go to Florida in order to alleviate specific chronic ailments and to escape unfavorable climatic conditions which have proven injurious to the health of the taxpayer, and the travel is prescribed for reasons other than the general improvement of a patient's health, the cost of the patient's transportation to Florida would be deductible *but not his living expenses* while there. [Italics supplied.]

See also S. Rept. No. 1622, 83d Cong., 2d Sess., pp. 35, 219–220. Substantially the same thought appears in the regulations, section 1.213–1(e) (iv). Accordingly, we hold that the expenses of the Bermuda trip, exclusive of the hotel and meals item, are deductible. There is no showing that the meals and hotel item herein was proximately related to medical care, apart from its being included in the traveling expenses. We express no opinion as to whether meals and lodging expenses might be deductible in other circumstances.

In a memorandum, accompanying petitioners' motion for reconsideration, the point is made, for the first time, that the Court could not examine the committee reports in construing the 1954 Code in relation to the hotel and meals item. Although there may have been support at one time for such a rigid limitation upon the interpretation of statutes (cf. *Caminetti* v. *United States*, 242 U.S. 470), it is now established beyond successful challenge that a court may seek out any reliable evidence as to legislative purpose regardless of whether the statutory language appears to be clear. *United States* v. *Amer. Trucking Ass'ns.*, 310 U.S. 534, 543–544; *United States* v. *Dickerson*, 310 U.S. 554, 562; *United States* v. *Rosenblum Truck Lines*, 315 U.S. 50, 55; *Harrison* v. *Northern Trust Co.*, 317 U.S. 476, 479; *Cabell* v. *Markham*, 148 F. 2d 737, 739 (C.A. 2), affirmed 326 U.S. 404, 409; *C. & S. Air Lines* v. *Waterman Corp.*, 333 U.S. 103, 106; *Schwegmann Bros.* v. *Calvert Corp.*, 341 U.S. 384, 390–395, 399. Cf. also *Ozawa* v. *United States*, 260 U.S. 178, 194; *Church of the Holy Trinity* v. *United States*, 143 U.S. 457, 472. As the Supreme Court said in the *American Trucking* case (310 U.S. at 543–544):

When aid to construction of the meaning of words, as used in the statute, is available, there certainly can be no "rule of law" which forbids its use, however clear the words may appear on "superficial examination." The interpretation of the meaning of statutes, as applied to justiciable controversies, is exclusively a judicial function. This duty requires one body of public servants, the judges, to construe the meaning of what another body, the legislators, has said. Obviously there is danger that the courts' conclusion as to legislative purpose will be unconsciously influenced by the judges' own views or by factors not considered by the enacting body. A lively appreciation of the danger is best assurance of escape from its threat but hardly justifies an acceptance of a literal interpretation dogma which withholds from the courts available information for reaching a correct conclusion. * * *

To the extent that the Court in *Robert M. Bilder*, 33 T.C. 155, 158, failed to examine the foregoing legislative history, that decision is hereby disapproved.

As to the remaining item of $135 in controversy herein, the question is merely one of substantiation. The Commissioner did not indicate which of the numerous medical items composing the total amount claimed on the return was being disallowed. Such an adjustment, which respondent's counsel was unable to clarify even at the trial,

put an unfair burden upon the petitioner. Nevertheless, at the Court's suggestion, the petitioner undertook to give evidence as to all of the items claimed on the return. Taking into account the fact that petitioner appeared on his own behalf, that he is not a lawyer, and that we were impressed with his candor and credibility, we find that he in fact incurred all of the expenses claimed, even though his testimony was at times loose and perhaps might not have been as convincing in other circumstances. Since no issue is raised as to this item apart from substantiation we hold that respondent erred in disallowing the deduction.

Reviewed by the Court.

*Decision will be entered under Rule 50.*

DRENNEN, *J.*, concurs in the result.

---

WITHEY, *J.*, dissenting: I dissent from the opinion of the majority in this case upon two grounds, only one of which I discuss herein. As to the other ground, I concur in the dissent of Judge Pierce filed herein. In *Robert M. Bilder*, 33 T.C. 155, we correctly determined that in allowing the deduction of the taxpayer's meals and lodging incurred in Florida, it was not proper to consider the congressional history of section 213(e)(1)(B) of the 1954 Code. It is axiomatic that where courts need aid in understanding *what Congress has said*, they should resort to the history of legislation. It is because Congress *had not spoken* in section 213(e)(1)(B) upon the subject of meals and lodging but had spoken only on the deductibility of transportation expense that we did not feel called upon to resort to the history of that subparagraph of the statute. Congress had generally in subparagraph (A) of the section made the amounts paid for meals and lodging deductible when proximately related to the treatment, cure, or mitigation of a disease, but it has not, by the clear and unambiguous specific inclusion of transportation expense in subparagraph (B) among deductible medical expense, altered or amended subparagraph (A). The majority improperly seeks to fill a legislative void with the words of congressional committee reports which only by reading such reports as they do, appear to express an intent to exclude meals and lodging from deductible medical expense. This constitutes the grossest kind of judicial legislation. The reference to transportation expense in subparagraph (B) cannot by any stretch of the imagination be read to include the expense of meals and lodging incurred by a taxpayer while not being transported. Where Congress has in other legislation sought to cover both categories of expense, reference has been made to "travel expense" not "transportation

expense." Although one term may include the other they are not synonymous.

———

PIERCE, *J.*, dissenting: I think that the Court, in its opinion herein, has failed to meet squarely or deal adequately with the basic question here presented—which I regard to be a question of major importance, both to the Internal Revenue Service and to taxpayers generally. That question is: Whether expenses paid or incurred by a taxpayer *primarily for and essential to "convalescence" away from home*, following two major surgical operations, qualify for deduction as "expenses * * * for medical care," as defined in section 213(a)(1)(A) and (B) of the 1954 Code, and also as set forth in section 1.213 of the recently promulgated Income Tax Regulations pertaining to "medical care." More specifically, the question here is whether said statutory definition, in providing that "[t]he term 'medical care' means amounts paid—(A) for the * * * *cure, mitigation,* [or] *treatment* of disease * * * *or* (B) for *transportation* primarily for and essential to medical care referred to in subparagraph (A)" (emphasis supplied)—is sufficiently broad to comprehend expenses paid primarily for and essential to the "convalescence."

The specific items of convalescent expense involved in the instant case, are: In-transit "transportation" of the petitioner, to and from the place of convalescence; expenses for board and room, incurred by the petitioner in a "private establishment" (two hotels) where he resided for 9 days; and both the transportation and the board and room of the petitioner's wife, whose presence and assistance were found by the Court to be essential, and many of whose services were also found by the Court to be similar to those which might have been provided by a "nurse."

The fact that the above-stated question is directly presented in the instant case, is evidenced by: The petitioner's return, in which he made claim to the deductions for "medical care"; by his petition to this Court, in which he assigned error in the denial of such deductions; by the Court's findings of fact, which disclose the seriousness of the illness and the indispensability of the wife's presence on the convalescence trip; and also by the Court's conclusions that the trip was undertaken solely for medical reasons, and was in no sense a vacation trip.

2. The inadequacy of the Court's opinion is, in my view, indicated by the following. The Court did not give sufficient consideration to the complete statutory definition of "medical care" contained in section 213(e). Indeed, it entirely ignored the application of subparagraph (A) thereof, which I believe contains the controlling

provisions; and it relied solely on subparagraph (B) pertaining to "transportation," notwithstanding that this subparagraph is, by its own terms, specifically made dependent on the provisions of subparagraph (A). I find no warrant or justification whatever, for the Court's complete bypassing of the provisions of subparagraph (A), by employment of the statement: "There is no showing that the meals and hotel items herein were proximately related to medical care, apart from their being included in the travel expense." I believe that the application of subparagraph (A) is in no way dependent on subparagraph (B) which was added after the conjunction "or," that marks an alternative.

The Court rested its decision primarily upon two quotations from the report of one of the legislative committees—one of which quotations makes reference only to "ordinary" living expenses; and the other of which quotations omits both the initial sentence and the final sentence of that paragraph of the report from which the quotation was taken.[1] I regard said final sentence to be of particular importance, because of the expanded meaning attributed to the committee report by the Treasury Department, in paragraphs (e) (ii), (iv), and (v) of the above-mentioned new regulations.

Furthermore, the Court made no reference whatever to paragraphs (e) (ii) and (e) (v) of the regulations, which contain provisions that relate specifically to the deductibility of "nurse's board," and also to "meals and lodging" in a hospital, or in "an institution other than a hospital," or in a "private establishment" which provides "care" similar to that obtainable in such institutions.

Said regulations provide in substance that whether expenses for care in such an "institution" or "private establishment" qualify for deduction as "medical care," is *"primarily a question of fact* which depends upon the *condition of the individual* and the *nature of the services he receives* (rather than the nature of the institution)." (Emphasis supplied.)

I think that the Court should have considered and applied the provisions of the new regulations, and also should have determined whether they are applicable to convalescent expenses. I also think that, since the Court allowed deduction for the *wife's transportation* on the convalescence trip, on the theory that she was an essential quasi-nurse, it should consistently have allowed deduction for *this quasi-nurse's board,* under subsection (e) (ii) of the above-mentioned new regulations.

3. There are at least three cases in which it has been decided that medical deductions are allowable for board and room during con-

---

[1] The above-mentioned final sentence provides as follows: "The subsection is not intended otherwise to change the existing definition of medical care, to deny the cost of ordinary ambulance transportation nor to deny the cost of food or lodging provided as part of a hospital bill."

valescence in a private establishment away from home. *L. Keever Stringham*, 12 T.C. 580, reviewed by the Court, affd. 183 F. 2d 579 (C.A. 6); *Robert Bilder*, 33 T.C. 155, pending on appeal (C.A. 3); *Estate of Harry W. Embry* v. *Gray*, 145 F. Supp. 603 (W.D. Ky.), appeal dismissed on motion of appellant-district director 244 F. 2d 718 (C.A. 6).

The *Stringham* and *Embry* cases were decided under section 23(x) of the 1939 code, which contains a definition of "medical care," that is substantially identical to that incorporated in section 213(e) (1) (A) of the 1954 Code. The *Bilder* case, like the instant case, was decided by this Court under the 1954 Code; and as above noted, it is now pending on appeal before the Court of Appeals for the Third Circuit.

All of these cases are, in my view, either out of harmony or in conflict with the Court's decision in the instant case. Yet, the Court did not distinguish any of these cases; did not cite any of them except the *Bilder* case; and in the *Bilder* case, it referred only to what it regarded to be a procedural error of this Court, without in any way indicating that the result reached therein was incorrect.

The question involved in this and the above-cited cases is a narrow one; and we should not vacillate. I think that the answer to such question is sufficiently uncertain, that this Court should, as a matter of sound judicial procedure, have deferred issuance of its conflicting Opinion in the instant case until the Court of Appeals for the Third Circuit has rendered its decision in the *Bilder* case.