BESSIE STANLEY, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

ESTATE OF JOSEPH STANLEY, DECEASED, BESSIE STANLEY, EXECUTRIX, AND BESSIE STANLEY, HIS SURVIVING WIFE, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket Nos. 94773, 94774. Filed August 16, 1963.

*Henry W. Howard*, for the petitioner.
*James Booher*, for the respondent.

#### OPINION

SCOTT, *Judge:* Respondent determined deficiencies in income tax of the Estate of Joseph Stanley, Deceased, Bessie Stanley, Executrix, and Bessie Stanley, His Surviving Wife, and in the income tax of Bessie Stanley for the taxable years ended April 30, 1959 and 1960, in the amounts of $5,413.87 and $35,140.83, respectively.

The issue for decision is whether Bessie Stanley in each of the years here involved realized taxable capital gain from installment payments received subsequent to her husband's death on obligations obtained from sales of community property prior to her husband's death, where the spouses had elected to report gain on the installment method.

All of the facts have been stipulated and are found accordingly.

Joseph and Bessie Stanley were husband and wife from March 2, 1937, until November 15, 1958, on which date Joseph Stanley died. Joseph (deceased November 15, 1958) and Bessie Stanley filed a joint Federal income tax return for the fiscal year ended April 30, 1959, and

Bessie Stanley filed an individual Federal income tax return for the taxable year ended April 30, 1960, both returns being filed with the district director of internal revenue at Los Angeles, Calif.

Immediately preceding Joseph's death, all property of Joseph and Bessie Stanley was the community property of both of them, subject to the laws of California relating thereto. Before Joseph's death, Joseph and Bessie Stanley made three sales of property which was then held as community property under the laws of California, the first such sale being on January 29, 1952, the second on January 18, 1954, and the third on August 19, 1954. Each of these sales was of a linen-supply business and real and personal property and was made on a conditional sales contract payable in installments. The sale on January 29, 1952, was for a total purchase price of $2 million, payable in monthly installments of $16,667 with interest at 6 percent beginning March 1, 1952. The sale on January 18, 1954, was for a total purchase price of $23,097, payable in monthly installments of $384.95 with interest at 7 percent beginning February 25, 1954; and the sale on August 19, 1954, was for a total purchase price of $135,908, payable in monthly installments of $1,143.75 with interest at 6 percent beginning August 23, 1956.

For Federal income tax purposes Joseph and Bessie Stanley elected to treat the recognition of gains from each of the three sales on the installment basis pursuant to section 44 of the Internal Revenue Code of 1939 and section 453 of the Internal Revenue Code of 1954.

For the taxable periods ending April 30, 1958, Joseph and Bessie Stanley's income tax returns showed taxable gain from the three installment sales as follows:

| Date of sale | Contract price | Total gain on sales | Total collections on installment obligations to Apr. 30, 1958 | Percentage of collections returnable as taxable gain | Amounts returned as taxable gain |
|---|---|---|---|---|---|
| Jan. 29, 1952 | $2,000,000 | $1,271,508.72 | $691,842.08 | 63.57543 | $439,910.13 |
| Jan. 18, 1954 | 23,097 | 11,927.90 | 19,632.56 | 51.64264 | 10,138.72 |
| Aug. 19, 1954 | 135,908 | 31,356.69 | 13,590.84 | 23.071997 | 3,135.68 |
| | 2,159,005 | 1,314,793.31 | 725,065.48 | | 453,184.53 |

On Joseph's death the unpaid balances then due on the installment obligations were included in his gross estate for Federal estate tax purposes to the extent of his undivided one-half interest therein, the total of such amount being $681,656.36, which was one-half of the outstanding balances of $1,363,312.69 due on the three installment obligations on November 15, 1958.

For the taxable year ended April 30, 1959, the joint income tax return of Joseph Stanley, Deceased, and Bessie Stanley reported taxable capital gain from collections on the installment sales during the

period May 1, 1958, through November 15, 1958, on Joseph and Bessie Stanley's combined respective interests in the installment obligations as follows:

| Date of installment obligation | Total collections | Long-term capital gain | Short-term capital gain |
|---|---|---|---|
| Jan. 29, 1952 | $61,521.81 | $37,337.04 | $1,775.72 |
| Jan. 18, 1954 | 2,309.70 | 965.32 | 227.47 |
| Aug. 19, 1954 | 6,795.42 | 1,567.84 | |

During the period November 16, 1958, through April 30, 1959, and during the fiscal year ended April 30, 1960, total collections on the three installment obligations were as follows:

| Date of installment obligation | Period Nov. 16, 1958, through Apr. 30, 1959 | Fiscal year ended Apr. 30, 1960 |
|---|---|---|
| Jan. 29, 1952 | $52,693.41 | $430,343.79 |
| Jan. 18, 1954 | 1,154.85 | |
| Aug. 19, 1954 | 6,795.42 | 13,590.84 |

Bessie Stanley reported no gain from collections during the taxable period November 16, 1958, through April 30, 1960, attributable to her interest in any of the three installment obligations.

The estate of Joseph Stanley reported the following amount of taxable gain from collections during the period November 16, 1958, to April 30, 1960, attributable to its interest in the three installment obligations:

| Date of installment obligation | Taxable gain from collections during period Nov. 16, 1958, through Apr. 30, 1959 | Taxable gain from collections during period May 1, 1959, through Apr. 30, 1963 |
|---|---|---|
| Jan. 29, 1952 | $16,750.03 | $136,796.45 |
| Jan. 18, 1954 | 298.20 | |
| Aug. 19, 1954 | 783.92 | 1,567.84 |
| Total | 17,832.15 | 138,364.29 |

Bessie Stanley has not sold or exchanged her interest in any of the three installment obligations.

Respondent increased the income as reported by Joseph Stanley, Deceased, and Bessie Stanley for the fiscal year ended April 30, 1959, by the amount of $17,014.83 of long-term capital gain and the amount of $817.32 of short-term capital gain. These amounts were arrived at by applying the percentages of installment payments which were considered to be gain by Joseph and Bessie Stanley in their Federal income tax returns for prior fiscal years to one-half of the installment

payments received during the period November 15, 1958, to April 30, 1959. Respondent increased Bessie Stanley's income as reported for the fiscal year ended April 30, 1960, by capital gain of $72,287.42 computed in the same manner as for the prior period.

Petitioner takes the position that under the provisions of section 1014 of the Internal Revenue Code of 1954,[1] her basis in the installment obligations became one-half of the fair market value of the installment obligations on November 15, 1958, the date of her husband's death. It is petitioner's position that the fair market value of the installment obligations on November 15, 1958, was $1,363,312.69, which was the total unpaid balances of these installment obligations as of that date. Petitioner states that since the unpaid balances due on these installment obligations were included in Joseph's gross estate for Federal estate tax purposes to the extent of his undivided one-half interest therein that the basis of her undivided one-half interest in these same obligations became one-half of the unpaid balances due on these obligations at the date of Joseph's death under section 1014(b)(6). It is petitioner's position that since the payments she receives from the installment obligations will only return to her the basis of these installment obligations which she acquired at the date of her husband's death, she does not realize any income upon receipt of the payments on the installment obligations.

Respondent takes the position that Bessie Stanley's one-half interest in the installment obligations does not qualify for an adjusted basis under section 1014 (a) and (b)(6). It is respondent's position that Bessie's one-half interest in the installment obligations should be treated in the nature of income with respect to a decedent. Respondent further contends that section 1014(b)(6) applies only

---

[1] All references are to the Internal Revenue Code of 1954 unless otherwise indicated.
SEC. 1014. BASIS OF PROPERTY ACQUIRED FROM A DECEDENT.

(a) IN GENERAL.—Except as otherwise provided in this section, the basis of property in the hands of a person acquiring the property from a decedent or to whom the property passed from a decedent shall, if not sold, exchanged, or otherwise disposed of before the decedent's death by such person, be the fair market value of the property at the date of the decedent's death, or, in the case of an election under either section 2032 or section 811(j) of the Internal Revenue Code of 1939 where the decedent died after October 21, 1942, its value at the applicable valuation date prescribed by those sections.

(b) PROPERTY ACQUIRED FROM THE DECEDENT.—For purposes of subsection (a), the following property shall be considered to have been acquired from or to have passed from the decedent:

*　　*　　*　　*　　*　　*　　*

(6) In the case of decedents dying after December 31, 1947, property which represents the surviving spouse's one-half share of community property held by the decedent and the surviving spouse under the community property laws of any State, Territory, or possession of the United States or any foreign country, if at least one-half of the whole of the community interest in such property was includible in determining the value of the decedent's gross estate under chapter 11 of subtitle B (section 2001 and following relating to estate tax) or section 811 of the Internal Revenue Code of 1939;

*　　*　　*　　*　　*　　*　　*

(c) PROPERTY REPRESENTING INCOME IN RESPECT OF A DECEDENT.—This section shall not apply to property which constitutes a right to receive an item of income in respect of a decedent under section 691.

to property which is the subject of a sale or exchange, and Bessie Stanley has not sold or exchanged her interest in the installment obligations.

Except insofar as section 1014(c) may be construed as removing the installment obligations from the type of property which would take the basis of its fair market value at the date of a spouse's death, the installment obligations here involved come within the literal language of section 1014(b)(6). The only case which has come to our attention dealing directly with a situation similar to the present one is *Bath* v. *United States*, 211 F. Supp. 368 (S.D. Tex. 1962), on appeal (C.A. 5, Feb. 4, 1963). Installment obligations which were community property under the community property laws of the State of Texas were involved in that case. The District Court held that the "stepped-up" basis which the surviving spouse received under section 1014(b)(6) in the installment obligations there involved would become operative only upon the sale or exchange of the installment obligations and had no relevance in determining the amount of his gain from the sale of the land which had been made prior to the date of his wife's death.

Petitioner points out that section 1014 refers to the adjusted basis for determining gain or loss from the sale or other disposition of property and not merely to the sale or exchange. Petitioner, contending that the payment of the installment obligations is a disposition of them, cited *Hatch* v. *Commissioner*, 190 F. 2d 254 (C.A. 2, 1951), modifying *May D. Hatch*, 14 T.C. 237 (1950), and *Eleanor S. Howell*, 24 T.C. 342 (1955). In *May D. Hatch, supra*, we recognized that the collection of amounts due under a contract represented a disposition of the property right in the contract so that, to the extent of the basis in the contractual right, gain did not result. This holding recognized that no income resulted to a decedent's estate where the total payment received on an obligation by the estate did not exceed the amount at which the obligation was included for estate tax purpose in the decedent's estate. See *Bank of California, National Ass'n, Executor*, 25 B.T.A. 179, 181 (1932), and cases there cited.

If, as petitioner contends, the collections on her one-half interest in the installment obligations are a disposition of her interest in those obligations, petitioner has not received income from the disposition if the basis of the obligations which she is entitled to recover before taxable gain results is, under section 1014, one-half the fair market value of the obligations at the date of her husband's death.

It is clear that it was not the intention of section 1014(b)(6) to give any such advantage to a surviving spouse in a community-property State as compared to a surviving spouse in a common-law State. The committee report at the time of the adoption of the provision

which is now section 1014(b)(6) shows that Congress intended to equalize Federal taxes after death of a spouse between the community-property and common-law States.[2] An intention to equalize taxes shows that there was not an intention to give to a surviving spouse in a community-property State such an advantage as is claimed by petitioner herein.

Petitioner takes the position that if Congress did not intend for a surviving spouse in a community-property State to have the benefit of receiving one-half of the gain on installment payments remaining to be collected at the other spouse's death free of Federal income tax, the statute itself leaves a defect which Congress should be left to remedy. Petitioner relies on *Fabreeka Products Co.* v. *Commissioner*, 294 F. 2d 876, 878–879 (C.A. 1, 1962), remanding 34 T.C. 290, 34 T.C. 303, and 34 T.C. 456, wherein the court stated, "Granting the government's proposition that these taxpayers have found a hole in the dike, we believe it one that calls for the application of the Congressional thumb, not the court's."

There is no reference in *Fabreeka Products Co.* v. *Commissioner*, *supra*, to legislative history of the section there involved and a footnote to the statement of the court which we have quoted and which is part of the quotation from that case relied on by petitioner in her brief states as follows:

[3] It may not be irrelevant to note that when Congress did amend the statute by the Technical Amendments Act of 1958, sec. 72 Stat. 1606, 1610, it made a change in no way corresponding to what the government now proposes.

---

[2] S. Rept. No. 1013, 80th Cong., 2d Sess., p. 29 (1948), 1948–1 C.B. 285, 306, states in this regard:

In order to give persons receiving community property the same basis for determining gain or loss on a sale of property after death as is given to the recipients of property passing under the common law, an amendment is being made to the capital gains provisions of the income tax. Under existing law property acquired "by bequest, devise, or inheritance" has as its basis for capital gains purposes the fair market value of the property at the time of the decedent's death or the fair market value at the optional valuation date. Your committee's bill provides that the surviving spouse in a common-law State may receive up to one-half of the estate of the decedent free of estate tax. In so far as such property passes from the decedent to the surviving spouse "by bequest, devise, or inheritance," the surviving spouse will have as a basis the fair market value at the time of the decedent's death or the fair market value at the optional valuation date. On the other hand, under existing law the one-half interest of the surviving spouse in community property is not property received "by bequest, device, or inheritance." As a result, under present law the surviving spouse in a community-property State must use as a basis for his share of the community assets the cost to the community. Your committee's bill provides that the surviving spouse's interest in community property shall be deemed to have been acquired "by bequest, devise, or inheritance" from the decedent, thus giving the assets a basis equal to the fair market value as of the date of the first spouse's death or the fair market value at the optional valuation date. This equalizes the taxes on capital gains in common-law and community-property States.

This provision is effective with respect to community property acquired by the surviving spouse from a decedent dying after the date of enactment of this act.

In the instant case the congressional intent with respect to section 1014(b)(6) is clear. As stated by the Supreme Court in *United States* v. *Amer. Trucking Ass'ns*, 310 U.S. 534, 543–544 (1940), "When aid to construction of the meaning of words, as used in the statute, is available, there certainly can be no 'rule of law' which forbids its use, however clear the words may appear on 'superficial examination.'" See also *Max Carasso*, 34 T.C. 1139 (1960), affd. 292 F. 2d 367 (C.A. 2, 1961).

However, in the instant case, as stated by the Court in *Commissioner* v. *Bilder*, 369 U.S. 499 (1962), "We need not consider whether we would be warranted in disregarding these unequivocal expressions of legislative intent if the statute were so written as to permit no reasonable construction other than that urged on behalf of the taxpayer." It is generally recognized that particularly where any ambiguity exists, the statute should be interpreted to carry out the congressional intent. We do not agree with petitioner that section 1014 requires an interpretation that Bessie's basis in her one-half interest in the installment obligations here involved is one-half the fair market value of these obligations at the date of Joseph's death. Section 1014(c) specifically states that section 1014 shall not apply to property which constitutes a right to receive an item of income in respect of a decedent under section 691. Joseph's undivided one-half interest in these installment obligations clearly is property which constitutes a right to receive income with respect to a decedent under the provisions of section 691(a)(4). Since section 1014(b)(6) refers to property which represents the surviving spouse's one-half share of community property held by the decedent and the surviving spouse, section 1014(c) makes this section inapplicable since the deceased spouse's part of the community property referred to constitutes a right to receive an item of income with respect to a decedent under section 691. It is not necessary to the inapplicability of section 1014 that the income from petitioner's one-half of the community property be income with respect to a decedent. The part of the installment obligations of decedent's estate is property which constitutes income with respect to a decedent. Section 1014(b)(6) has requirements as to both the surviving spouse's and deceased spouse's interest in the property. The total property which petitioner contends comes within section 1014(b)(6) is partly property which constitutes income with respect to a decedent and therefore section 1014 is made inapplicable to this property by section 1014(c).

Petitioner's only argument that the installment payments applicable to her one-half interest in the installment obligations do not con-

stitute taxable capital gains to the extent determined by respondent is that such amounts represent a return on the basis she acquired under section 1014. Since, as we view section 1014, it has no effect upon the basis of petitioner's one-half interest in the installment obligations, we sustain respondent's determination.

*Decisions will be entered for respondent.*