BEAUCHAMP & BROWN GROVES COMPANY, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 2871–62. Filed April 28, 1965.

---

*Sidney R. Reed*, for the petitioner.
*Robert L. Gnaizda*, for the respondent.

TRAIN, *Judge:* Respondent disallowed $23,220.32 of petitioner's 1960 expenses, which had been utilized as a net operating loss carryback, and determined deficiencies in income tax for petitioner's taxable years 1958 and 1959 in the respective amounts of $2,473.67 and $4,117.76.

The issue for decision is whether section 268 of the Internal Revenue Code of 1954[1] prevents the deduction of ordinary and necessary business expenses attributable to an unharvested crop where a corporation sells the crop with land pursuant to a liquidation under the provisions of section 337.

### FINDINGS OF FACT

Most of the facts have been stipulated and the stipulation of facts, together with the exhibits attached thereto, is incorporated herein by this reference.

Petitioner, Beauchamp & Brown Groves Co. (hereinafter sometimes referred to as petitioner), was incorporated under the laws of California on April 24, 1958, and had its office and principal place of business in Los Angeles, Calif. Petitioner's 1958, 1959, and 1960 income tax returns were filed with the district director of internal revenue at Los Angeles, Calif.

Petitioner owned and operated an orange grove. In the fiscal year ended August 31, 1958, petitioner reported:

| | |
|---|---|
| Sales of oranges | $42,422.91 |
| Net income | 22,013.47 |
| Federal income tax paid with return | 6,604.04 |
| Less: Federal income tax later refunded account of net operating loss carryback from year 1960 | 6,604.04 |

In the fiscal year ended August 31, 1959, petitioner reported:

| | |
|---|---|
| Sales of oranges | $57,101.74 |
| Miscellaneous income | 861.89 |
| Net income | 13,725.88 |
| Federal income tax paid with return | 4,117.76 |
| Less: Federal income tax later refunded account of net operating loss carryback from year 1960 | 4,117.76 |

On March 18, 1960, petitioner adopted a plan of complete liquidation pursuant to section 337. In April 1960, petitioner sold at the same time and to the same person its orange grove with unharvested crop at a $309,436.93 gain. The gain was not reported by petitioner because of the provisions of section 337.

For the fiscal year ended August 31, 1960, petitioner reported a net operating loss of $36,988.24. In December 1960, petitioner applied for a net operating loss carryback adjustment for its taxable years ended

---

[1] All statutory references are to the Internal Revenue Code of 1954 unless otherwise indicated.

August 31, 1958, and August 31, 1959. Petitioner's application was granted and resulted in a refund of all taxes paid by petitioner for such years plus interest.

Subsequent to the liquidation and distribution by petitioner of its assets under California law, an aggregate capital gain on the distribution of $309,436.93 was reported by petitioner's stockholder-distributees.

OPINION

The petitioner contends that deductions attributable to the production of a crop, which are ordinarily disallowed by section 268 [2] where an unharvested crop sold with the land is considered as "property used in the trade or business" under section 1231, are allowable when the sale is made pursuant to a plan of complete liquidation under section 337. [3] Petitioner's position is that section 1231 [4] applies

[2] SEC. 268. SALE OF LAND WITH UNHARVESTED CROP.

Where an unharvested crop sold by the taxpayer is considered under the provisions of section 1231 as "property used in the trade or business", in computing taxable income no deduction (whether or not for the taxable year of the sale and whether for expenses, depreciation, or otherwise) attributable to the production of such crop shall be allowed.

[3] SEC. 337. GAIN OR LOSS ON SALES OR EXCHANGES IN CONNECTION WITH CERTAIN LIQUIDATIONS.

(a) GENERAL RULE.—If—

(1) a corporation adopts a plan of complete liquidation on or after June 22, 1954, and

(2) within the 12-month period beginning on the date of the adoption of such plan, all of the assets of the corporation are distributed in complete liquidation, less assets retained to meet claims,

then no gain or loss shall be recognized to such corporation from the sale or exchange by it of property within such 12-month period.

[4] SEC. 1231. PROPERTY USED IN THE TRADE OR BUSINESS AND INVOLUNTARY CONVERSIONS.

(a) GENERAL RULE.—If, during the taxable year, the recognized gains on sales or exchanges of property used in the trade or business, plus the recognized gains from the compulsory or involuntary conversion (as a result of destruction in whole or in part, theft or seizure, or an exercise of the power of requisition or condemnation or the threat or imminence thereof) of property used in the trade or business and capital assets held for more than 6 months into other property or money, exceed the recognized losses from such sales, exchanges, and conversions, such gains and losses shall be considered as gains and losses from sales or exchanges of capital assets held for more than 6 months. If such gains do not exceed such losses, such gains and losses shall not be considered as gains and losses from sales or exchanges of capital assets. For purposes of this subsection—

(1) in determining under this subsection whether gains exceed losses, the gains described therein shall be included only if and to the extent taken into account in computing gross income and the losses described therein shall be included only if and to the extent taken into account in computing taxable income, except that section 1211 shall not apply; and

(2) losses upon the destruction, in whole or in part, theft or seizure, or requisition or condemnation of property used in the trade or business or capital assets held for more than 6 months shall be considered losses from a compulsory or involuntary conversion.

In the case of any property used in the trade or business and of any capital asset held for more than 6 months and held for the production of income, this subsection shall not apply to any loss, in respect of which the taxpayer is not compensated for by insurance in any amount, arising from fire, storm, shipwreck, or other casualty, or from theft.

(b) DEFINITION OF PROPERTY USED IN THE TRADE OR BUSINESS.—For purposes of this section—

\* \* \* \* \* \* \*

(4) UNHARVESTED CROP.—In the case of an unharvested crop on land used in the trade or business and held for more than 6 months, if the crop and the land are sold or exchanged (or compulsorily or involuntarily converted) at the same time and to the same person, the crop shall be considered as "property used in the trade or business."

only where there are recognized gains, and consequently that there must be recognized gain from the sale of the crop and land before section 1231 can characterize the crop. Petitioner attempts to reinforce its argument by stating that, "Also Respondent's own Regulation 1.1231–1(c)[5] restricts application of Section 1231 to *recognized* gains." Petitioner also contends that respondent ignores section 1016 (a)(11) [6] which requires that amounts disallowed as deductions by section 268 be added to the basis of the property. Petitioner argues that since it recognized no gain under section 337, the provisions of section 1016(a)(11) become meaningless because basis in the property is of no consequence; thus, that sections 268 and 1231 cannot be applicable in the instant case. Finally, petitioner asserts that sections 268 and 1231 are clear on their face and need no interpretation.

Respondent contends that petitioner's argument rests on giving an effect to section 1231 which is contrary to the congressional intent announced upon the promulgation of section 268. Respondent also contends that the "recognition" or "nonrecognition" of gain is not relevant to the section 1231 definition of "property used in the trade or business."

We agree with respondent's determination that the deductions attributable to the unharvested crop which was sold with the land in 1960 should not be allowed to petitioner. While we do not agree that a literal reading of section 1231 necessarily supports petitioner's position, we do agree with respondent's contention that congressional intent must prevail over a literal reading where the two are in conflict. A scrutiny of the legislative history of the sections involved and an analysis of their interrelationship convinces us that petitioner's position, if sustained, would frustrate congressional intent.

Petitioner's contention that sections 268 and 1231 need no interpretation beyond their own words is merely an effort to preclude the Court from resorting to legislative history to resolve the ambiguity with which we are faced. Section 268 denies deductions attributable to an unharvested crop sold by the taxpayer "Where * * * [it] is

---

[5] Sec. 1.1231–1 Gains and losses from the sale or exchange of certain property used in the trade or business.

(c) *Transactions to which section applies. Section 1231 applies to recognized gains and losses from the following:*

*     *     *     *     *     *     *

(5) The sale, exchange, or involuntary conversion of unharvested crops on land which is (i) used in the taxpayer's trade or business and held for more than 6 months, and (ii) sold or exchanged at the same time and to the same person. * * * [Emphasis supplied.]

[Petitioner apparently is depending on the introductory language of paragraph (c), *supra*, to substantiate the limitation he maintains exists.]

[6] SEC. 1016. ADJUSTMENTS TO BASIS.

(a) GENERAL RULE.—Proper adjustment in respect of the property shall in all cases be made—

*     *     *     *     *     *     *

(11) for deductions to the extent disallowed under section 268 (relating to sale of land with unharvested crops), notwithstanding the provisions of any other paragraph of this subsection;

considered under * * * section 1231 as 'property used in the trade or business.' " Section 1231 provides generally that if a taxpayer has a net gain from the disposition of "property used in the trade or business" and capital assets, the gains and losses from such dispositions shall be capital gains and losses. Section 1231(b) (4) provides that an unharvested crop on land used in the trade or business and held for more than 6 months shall be considered as "property used in the trade or business" for purposes of section 1231, if crop and land are sold or exchanged at the same time and to the same person. Section 1.1231-1(c), Income Tax Regs., begins, "Section 1231 applies to recognized gains and losses from the following: * * *." It is far from clear whether the presence of recognized gain is a condition precedent to the application of the definition contained in section 1231(b) (4) to any sale of land with unharvested crop.

There is no doubt that a court may resort to legislative history to determine ambiguities within or between statutes. *J. C. Penney Co.*, 37 T.C. 1013, 1017 (1962), affd. 312 F. 2d 65 (C.A. 2, 1962). Moreover, "it is now established beyond successful challenge that a court may seek out any reliable evidence as to legislative purpose regardless of whether the statutory language appears to be clear." *Max Carasso*, 34 T.C. 1139, 1142 (1960), affd. 292 F. 2d 367 (C.A. 2, 1961).[7] Words are inexact tools at best, and for that reason there is wisely no rule of law forbidding resort to explanatory legislative history. *Harrison* v. *Northern Trust Co.*, 317 U.S. 476, 479 (1943).

The purpose of Congress is a dominant factor in determining meaning. *United States* v. *C.I.O.*, 335 U.S. 106, 112 (1948). If a statute is ambiguous on its face, or its relationship with other statutes is ambiguous, it is the function of the courts to construe the statute or statutes involved in such a manner as to best give effect to congressional intent, sacrificing, if necessary, the literal reading in order that the purpose may not fail. See *J. C. Penney Co.*, *supra*, and cases cited therein at 1017; *Bessie Stanley*, 40 T.C. 851, 857 (1963).

Section 117(j) (3) of the Internal Revenue Code of 1939, the identical predecessor of section 1231(b) (4), was added by section 323(a) of the Revenue Act of 1951. The purpose of the section was to provide that certain sales of land together with an unharvested crop should

---

[7] See also *United States* v. *Amer. Trucking Ass'ns.*, 310 U.S. 534, 543–544 (1940) :

"* * * When aid to construction of the meaning of words, as used in the statute, is available, there certainly can be no 'rule of law' which forbids its use, however clear the words may appear on 'superficial examination.' The interpretation of the meaning of statutes, as applied to justiciable controversies, is exclusively a judicial function. This duty requires one body of public servants, the judges, to construe the meaning of what another body, the legislators, has said. Obviously there is danger that the courts' conclusion as to legislative purpose will be unconsciously influenced by the judges' own views or by factors not considered by the enacting body. A lively appreciation of the danger is best assurance of escape from its threat but hardly justifies an acceptance of a literal interpretation dogma which withholds from the courts available information for reaching a correct conclusion. * * *"

result in capital gains rather than ordinary income. See S. Rept. No. 781, 82d Cong., 1st Sess., p. 47 (1951), where the Senate Finance Committee explained its purpose as follows, in part:

> Where unharvested crops are sold with the land, or unripe fruit is sold together with the land and the trees, a difficult question has arisen as to the proper application of the present law to the unharvested crops or the unripe fruit.
>
> The Bureau of Internal Revenue has ruled that, whether or not such crops or fruit are regarded as a part of the real estate under local law, they constitute property held "primarily for sale to customers in the ordinary course of his (the taxpayer's) trade or business" and thus, under the provisions of section 117(j), any gain on the sale of the unharvested crops or unripe fruit is to be separately determined and treated as ordinary income instead of as a capital gain. In several decisions the Tax Court (with some members dissenting) has taken a similar view, but two district courts have held that such fruits or crops constitute "property used in the trade or business" so that a gain from a sale of the land, trees, and fruit would be treated as a capital gain with the result that the entire gain from the sale of such property would constitute ordinary income [sic—capital gain].
>
> Your committee believes that sales of land together with growing crops or fruit are not such transactions as occur in the ordinary course of business and should thus result in capital gains rather than in ordinary income. * * *

Section 24(f) of the Internal Revenue Code of 1939, the identical predecessor of section 268, was added by section 323(b) of the Revenue Act of 1951. The purpose of the section was to provide that deductions attributable to the production of an unharvested crop sold with the land, which was considered as "property used in the trade or business" under section 117(j)(3), would be disallowed and added to the basis of the property. Congress did not want the expenses of producing capital gain to be deducted from ordinary income. See S. Rept. No. 781, *supra* at 47–48, where the following statement of purpose was set forth, in part:

> Your committee recognizes, however, that when the taxpayer keeps his accounts and makes his returns on the cash receipts and disbursements basis, the expenses of growing the unharvested crop or the unripe fruit will be deducted in full from ordinary income, while the entire proceeds from the sale of the crop, as such, will be viewed as a capital gain. Actually, of course, the true gain in such cases is the difference between that part of the selling price attributable to the crop or fruit and the expenses attributable to its production. Therefore, your committee's bill provides that no deduction shall be allowed which is attributable to the production of such crops or fruit, but that the deductions so disallowed shall be included in the basis of the property for the purpose of computing the capital gain.

The conference report indicates, with respect to these two sections added by the Senate Finance Committee, only that the House receded from its disagreement. The committee reports with respect to the Internal Revenue Code of 1954 (H.R. 8300) indicate nothing about these sections except that they were a continuation of sections 24(f) and 117(j) of the 1939 Code. Finally, we note that Congress, in en-

acting sections 24(f) and 117(j)(3), chose to make the sections mandatory instead of optional. There is no doubt that if petitioner had not elected to liquidate under section 337, the provisions of sections 1231 and 268 would have automatically applied to the sale of the land with unharvested crop.

Section 337 was enacted into the law in 1954. It had no predecessor in the 1939 Code and was enacted specifically to resolve the problems created by the decisions in *Commissioner* v. *Court Holding Co.*, 324 U.S. 331 (1945),[8] and *U.S.* v. *Cumberland Pub. Serv. Co.*, 338 U.S. 451 (1950),[9] which resulted in undue weight being accorded the formalities in determining whether the liquidating corporation or the shareholder sold property and a "trap for the unwary."[10] Section 337 was intended to eliminate this problem by divorcing the tax consequences of the liquidation/sale of assets situation from the form of the transaction. Thus, the tax consequences to the shareholders will ordinarily be the same whether the corporation sells its assets and distributes the proceeds in complete liquidation, or merely distributes the assets in kind to be sold by the shareholders.

Section 337 provides nonrecognition treatment of loss as well as gain resulting from sales by a corporation during the 12-month period. Consequently, since section 337 is not an elective section,[11] it could have the result of denying a deduction for losses realized from the sale of property during liquidation[12]—even though the shareholders

---

[8] The *Court Holding Co.* case involved a corporation which was about to consummate a sale of its assets when, realizing the tax consequences, it purportedly called off the sale, liquidated, and distributed its assets. The shareholder-distributees immediately transferred to the same persons, at approximately the same terms, involved in the oral agreement arrived at prior to the sale. The Supreme Court held that the corporation had made the sale and that a sale by one person could not be converted into a sale by another merely by using the other person as a conduit for title.

[9] The *Cumberland Pub. Serv. Co.* case involved a corporation which refused to sell its assets because of the heavy capital gains tax involved. The shareholders' offer to acquire the assets and sell them to the prospective purchaser was accepted and the deal was consummated. The Supreme Court, in distinguishing this case from *Court Holding Co.*, held that here the sale was actually made by the shareholders. The Court acknowledged it was dealing in a shadowy area but noted that Congress had chosen to recognize such a distinction for tax purposes.

[10] S. Rept. No. 1622, 83d Cong., 2d Sess., p. 49 (1954).

[11] Sec. 337(a)(1) requires the adoption of a plan of complete liquidation. But see *Mountain Water Co. of La Crescenta*, 35 T.C. 418, 425 (1960), where the Court said: "the existence of a plan of liquidation * * * does not require the formal adoption of a resolution by the directors or stockholders, and is dependent on the facts in each case." Also, see *Alameda Realty Corporation*, 42 T.C. 273, 282 (1964), where the Court said: "The fact that no formal resolution of dissolution was adopted but rather Alameda paid no further franchise taxes and let its charter be revoked by the State of New Jersey on February 2, 1959, for nonpayment of franchise taxes is not inconsistent with such a plan [under sec. 337]."

[12] See *City Bank of Washington*, 38 T.C. 713 (1962), where several days before the adoption of a plan of complete liquidation and a resolution to sell all petitioner's assets, petitioner sold a portion of its Government securities at a loss. Petitioner, conceding that a tax advantage was deliberately sought, denied the Commissioner's contention that a plan was actually adopted before the sale and thus sec. 337 prevented recognition of the loss. The Court found the petitioner was anticipating but had not adopted the plan on the date of the sale so that the loss was allowed.

had no intention of avoiding the *Court Holding Co.* doctrine. Congress, in deciding to eliminate uncertainty and ignore some transactions that would have clearly been taxable to the corporation under prior law, obviously did not distribute its largesse with complete abandon. In adopting section 1231(b)(4) Congress also saw fit to attach a price tag—section 268. As the Court said in *New Colonial Co.* v. *Helvering*, 292 U.S. 435, 440 (1934):

Whether and to what extent deductions shall be allowed depends upon legislative grace; and only as there is clear provision therefor can any particular deduction be allowed.

The fact that petitioner cannot utilize the "relief" provision of section 1016(a)(11) in no way changes the result of this case.[13] In making certain benefits available in the tax law, Congress may set whatever standards it deems reasonable for qualifying for those benefits; certainly, it is not incumbent upon Congress to guarantee their usefulness to every taxpayer. "Petitioner would have us confuse the 'applicability' of the section with its tax consequences." *L. M. Lockhart*, 43 T.C. 776 (1965).

When sections 337 and 392 were adopted, the antecedents of sections 268 and 1231(b)(4) had been part of the Internal Revenue Code for several years. Congress had no discernible intent to change the relationship between sections 268 and 1231(b)(4) by the enactment of section 337.

Petitioner asks us to allow precisely what Congress saw fit to deny—a deduction from ordinary income for expenses incurred in growing an unharvested crop, the sale of which produced capital gain. See S. Rept. No. 781, *supra* at 47–48. It is true that petitioner would utilize the deduction from ordinary income while the capital gain is recognized to its distributees. However, the purpose of section 337 is to assure uniform tax results from sales of corporate property during the 12-month period following the adoption of a plan of complete liquidation. See S. Rept No. 1622, 83d Cong., 2d Sess., p. 49 (1954). Section 337 guarantees that such sales will be treated as made by the distributees and thus prevents taxation at the corporate level. The benefits conferred by section 337 cannot be enjoyed *in vacuo.*

---

[13] See *Rhama E. Philbrick*, 38 T.C. 666 (1962), where the Court, in holding that petitioners were not entitled to increase the cost basis of their stock (in a corporation which had just liquidated under sec. 337) by any amount for goodwill owned by the corporation which the corporation sold or transferred with its assets to the buying corporation, said at pages 669–670:

"* * * Any cost basis of such goodwill would be material to Superior [the liquidated corporation] if a gain or loss were being determined for Superior on the sale or transfer to the buying corporation. But no such gain or loss is involved for the reason that under the plan of complete liquidation * * * 'no gain or loss shall be recognized' to Superior under section 337 of the 1954 Code."

Since petitioner is asking us to find a result that is plainly contrary to congressional intent, we hold for the respondent.[14]

Petitioner cites *Hawaiian Trust Company Limited* v. *United States*, 291 F. 2d 761 (C.A. 9, 1961), and six other cases dealing with the question of wholly exempt versus nonrecognized income. We agree with the respondent, that the analogy between these cases and those cited by petitioner is somewhat strained. The cases in question determined that nonrecognized income was not the same as wholly exempt income for the purposes of section 265 (or its predecessor), which denies certain deductions allocable to wholly exempt income. These cases were primarily definitional problems.

Petitioner, on page 4 of its reply brief, claims that—

> Respondent's brief at page 6 quoting Section 268 omits four words that are very meaningful in consideration of this case. The following underscored words should be included "Where an unharvested crop sold by the taxpayer is considered under the provisions of section 1231 as 'property used in the trade or business' *in computing taxable income,* no deduction \* \* \* attributable to the production of such crop shall be allowed." It is submitted the underscored words restrict the application of Section 268 to instances where Section 1231 applies "in computing taxable income." Now since Section 1231 does not apply to petitioner's sale in computing taxable income of its orange grove because it did not result in a gain recognized under Section 1231 neither Section 1231 nor Section 268 apply.

Like a mirage on a desert, this portion of petitioner's argument is dispelled by close scrutiny. Petitioner, in its zealousness to thrust home its argument, has transposed a comma. Section 268 of the Internal Revenue Code of 1954 reads, in part, as follows:

> Where an unharvested crop sold by the taxpayer is considered under the provisions of section 1231 as "property used in the trade or business", *in computing taxable income* no deduction \* \* \* attributable to the production of such crop shall be allowed. [Emphasis supplied.]

Finally, petitioner claims that the Commissioner is turning section 337 into a "trap for the unwary" while the specific purpose of the section was to remedy just such a situation. Petitioner alleges that if it had liquidated prior to the sale of the grove, it would have had no difficulty in taking its deductions;[15] that respondent's disallowance makes section 337 a trap by not providing for the same tax results for sales immediately before and after complete liquidation. We do not rule on petitioner's assumption since that situation is not present here.

Reviewed by the Court.

*Decision will be entered for the respondent.*

---

[14] *United States* v. *Amer. Trucking Ass'ns., supra* at 543:

"\* \* \* Frequently, however, even when the plain meaning did not produce absurd results but merely an unreasonable one 'plainly at variance with the policy of the legislation as a whole'[20] this Court has followed that purpose, rather than the literal words.[21] \* \* \*" (Footnotes omitted.)

[15] Petitioner does not indicate, but we surmise, that it would depend on *Cumberland Pub. Serv. Co.* to prevent the *Court Holding Co.* doctrine from attributing the sale by the shareholders back to the corporation and creating the same problem.