ANCHORAGE NURSING HOME, INC., Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent CHARLES W. SELLERS, TRANSFEREE, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Anchorage Nursing Home, Inc. v. Commissioner
Docket Nos. 2430-73, 3259-73.
United States Tax Court
T.C. Memo 1974-295; 1974 Tax Ct. Memo LEXIS 24; 33 T.C.M. (CCH) 1372; T.C.M. (RIA) 740295; November 25, 1974, Filed. Charles W. Sellers, pro se. John O. Tannenbaum, for the respondent. TANNENWALD
MEMORANDUM OPINION TANNENWALD, Judge: Respondent determined a deficiency in the corporate petitioner's Federal income tax of $20,733.78 for its taxable year 1969 and transferee liability in the same amount against the individual petitioner, for his taxable year 1969, as transferee. *25 The only issue for decision is whether section 337 [1] is applicable to the facts herein. All of the facts have been stipulated and are incorporated herein by this reference. Anchorage Nursing Home, Inc. (hereinafter referred to as Anchorage) is a Massachusetts corporation with its former place of business in Shelbourne Falls, Massachusetts. Charles W. Sellers (hereinafter Sellers), the sole shareholder of Anchorage, resided in Pompano Beach, Florida, at the time his petition herein was filed. Sellers agrees that he is liable as transferee of the assets of Anchorage for any and all deficiencies and interest found to be due from Anchorage for its 1969 taxable year. For its 1969 taxable year, Anchorage filed its Federal income tax return with the Director, Internal Revenue Service Center, Andover, Massachusetts. From its inception in 1960 until its liquidation under a plan adopted on April 25, 1969, Anchorage was in the business of operating a nursing home. On April 9, 1969, Anchorage, Sellers, and his wife, Helen K. Sellers, *26 entered into a contract to sell all of the assets of Anchorage to Francis B. Caldwell and his wife, Dorothy Caldwell, for $150,000. Pertinent parts of the agreement are set forth below: 2. The deeds, bills of sale, covenants and such other instruments as may be necessary to effect the transfer and agreements set forth * * * above will be duly executed by the Sellers and delivered to the Buyers on or before July 1st, 1969. * * * 4. For the items set forth * * * above, the Buyers are to pay the sum of One Hundred and Fifty Thousand ($150,000.00) Dollars, of which Five Thousand ($5,000.00) Dollars will be paid on the signing of this Agreement * * * to be held * * * in * * * escrow * * * pending the closing of this transfer, One Hundred and Thirty-Five Thousand ($135,000.00) Dollars are to be paid in cash on delivery to the Buyers of the instruments set forth in paragraph 2 above and the remainder of Ten Thousand ($10,000.00) Dollars is to be paid on the date of said delivery by a Five (5) Year direct reduction note of the Buyers bearing interest at Six (6%) Per Cent per annum, installments of principal and interest payable monthly and secured by a power of sale second mortgage *27 in the usual form upon said premises set forth * * * above. 5. Full possession of the said premises, free of all tenants is to be delivered to the Buyers at the time of the delivery of the deed, * * * 6. The buildings in said premises shall, until full performance of this agreement, be kept insured by the Sellers in the amount of Eighty-Thousand ($80,000.00) Dollars but in case of any damage to said premises from any cause whatsoever, other than reasonable use and wear, prior to transfer of title hereunder, provided such damage from any and all causes is as much as One Thousand ($1,000.00) Dollars and is unrestored by time of transfer, the Buyers shall, at their option, take the insurance money or claim, if any, arising out of such damage and fulfill this contract, or may cancel this contract and the deposit made hereunder shall be returned to them and all further obligations of the parties shall thereupon terminate. * * * 8. The deed is to be delivered and the consideration paid, if the purchasers so require, at the Registry of Deeds in which the deed should by law be recorded, on Tuesday, July 1st, 1969 at 1:00 P.M. unless some other place and time should be mutually *28 agreed upon. * * * 10. Any conveyances made by the Sellers under the within agreement shall on request of the Buyers be made to such corporation, individual or individuals as the Buyers might designate prior to the closing. The contract of sale allocated $87,000 as payment for Anchorage's land and buildings. As a result, Anchorage realized a loss of $36,136.66 on the sale of this property. Subsequent to the adoption of the plan of liquidation, all of the assets of Anchorage were transferred pursuant to paragraph 10 of the agreement. Thereafter, all of the proceeds of sale, with the exception of a small and reasonable amount retained by Anchorage to meet claims, were distributed by Anchorage, in complete liquidation, to Sellers within 12 months of April 25, 1969. At the time the final return of Anchorage was filed, Anchorage did not comply with the requirements of section 1.337-6, Income Tax Regs., relating to information to be attached to the final return of a liquidating corporation in cases to which section 337(a) applies. As of the time of trial, Anchorage had not yet been formally dissolved. The amounts distributed by Anchorage to Sellers were distributed *29 in complete liquidation of Anchorage and were treated by him as full payments in exchange for his Anchorage stock.
The single issue involved herein arises from the claim that section 337 does not apply to Anchorage, with the result that a loss sustained on that portion of the sale of its assets attributable to the land and buildings should be an allowable deduction. The main reason that the issue arises is that certain portions of the proceeds of such sale were allocable to section 1245 property, to a covenant not to compete, and to items previously deducted by Anchorage. Additionally, certain commission expenses of Anchorage were treated as offsets to the sales proceeds and disallowed as deductible expenses. Petitioners do not dispute any of these adjustments and we consider them as conceded. Nor do petitioners contend that the sale of Anchorage's assets took place prior to the adoption of the plan of liquidation - a position which would in any event be untenable, since the April 9, 1969 agreement was clearly only a "contract to sell" and, in any event, the parties have stipulated that the assets of Anchorage were not transferred until after the adoption of the plan of liquidation *30 on April 25, 1969. J. T. Wurtsbaugh, 8 T.C. 183 (1947). See section 1.337-2, Income Tax Regs.
The sole thrust of petitioners' position is that, as it turned out, Anchorage did not derive the anticipated benefits of section 337 and therefore the provisions of that section [2] should not apply to deny the claimed loss. Petitioners state their position as follows: * * * In the instant case, facts fit under Section 331 as well as under Section 337. * * * * * * * * * In the instant case it certainly appears to be undesirable to file a tax return under Section 337 especially where all of the facts and circumstances fit under Section *31 331 and the tax under Section 331 is considerably less than the tax under Section 337. * * * Since Section 337 was designed as a relief section, a taxpayer should not be penalized merely because of the fact that the transactions which were entered into fit into the legal interpretation of that particular section. Unfortunately, there is no basis upon which petitioner can prevail. As we stated in Vern Realty, Inc., 58 T.C. 1005, 1009 (1972), affirmed in an unreported opinion 73-1 U.S.T.C. par. 9455, (C.A. 1, 1973): * * * The section is elective in the sense that a taxpayer may plan and execute its liquidation in such a way as to fall within or without the rules of the section. However, if the transaction fits the fact situation described by the Code, the provision must be applied. [Emphasis added.] Beauchamp & Brown Groves Co., 44 T.C. 117, 123 (1965), affd. 371 F.2d 942 (C.A. 9, 1967), is to the same effect. Anchorage's failure to comply with section 1.337-6, Income Tax Regs. (information to be attached to the final return of a liquidating corporation), and its failure to formally dissolve pursuant to state law *32 do not render section 337 inapplicable. Pridemark, Inc. v. Commissioner, 345 F.2d 35, 41 (C.A. 4, 1965), affirming in part and reversing in part on other grounds 42 T.C. 510 (1964); Alameda Realty Corporation, 42 T.C. 273 (1964). See also Rev. Rul. 65-30, 1965-1 C.B. 155. Anchorage's loss on the sale of its land and buildings is not allowable by virtue of section 337 and is therefore of no avail to Sellers as transferee of Anchorage's assets. [3]
Decision will be entered for *33 the respondent. Footnotes
1. Unless otherwise indicated, statutory references are to the Internal Revenue Code of 1954, as amended and in effect during the year in issue. ↩
2. SEC. 337. GAIN OR LOSS ON SALES OR EXCHANGES IN CONNECTION WITH CERTAIN LIQUIDATIONS. (a) General Rule. - If - (1) a corporation adopts a plan of complete liquidation on or after June 22, 1954, and (2) within the 12-month period beginning on the date of the adoption of such plan, all of the assets of the corporation are distributed in complete liquidation, less assets retained to meet claims, then no gain or loss shall be recognized to such corporation from the sale or exchange by it of property within such 12-month period. ↩
3. We note that Sellers' argument that he should be taxed pursuant to section 331 is entirely misconceived. The parties have stipulated that "amounts distributed by Anchorage to Charles W. Sellers * * * were distributed in complete liquidation of Anchorage and were treated as in full payment in exchange for the stock of Anchorage." Thus, section 331 has already been used by Sellers to determine the character of the gain or loss derived from the distribution to him. His liability arising from the facts herein as a result of the application of section 337 to the corporation's sale and the fact that he is transferee of the assets of that corporation. ↩