Estate of Jacob Hentz, Jr., Deceased, George F. L. Hentz, Successor Executor v. Commissioner.
Estate of Jacob Hentz v. Commissioner
Docket No. 36704.
United States Tax Court
1953 Tax Ct. Memo LEXIS 309; 12 T.C.M. (CCH) 368; T.C.M. (RIA) 53110; April 6, 1953
George F. L. Hentz, Esq., 189 Montague Street, Brooklyn, N.Y., pro se. Francis J. Butler, Esq., for the respondent. RAUM
Memoradum Opinion RAUM, Judge: The respondent determined a deficiency in the income tax of Jacob Hentz, Jr. in the amount of $157.28 for the calendar year 1948. The petitioner is successor executor of the estate of Jacob Hentz, Jr., having been appointed successor executor by a decree of the Surrogate's Court of the County of Kings, State of New York, on September 26, 1949. *310 Prior to his death, Jacob Hentz, Jr. was a resident of Brooklyn, New York. The sole question is whether the petitioner is entitled to deduct as expenses for medical care an amount in excess of that allowed by the respondent by reason of payments made to Nora Hurley during the year 1948. The case was submitted upon a stipulation of facts and a deposition made by a physician. The stipulated facts are as follows: Jacob Hentz, Jr., hereinafter referred to as petitioner, had been retired for about ten years prior to the taxable year 1948. His income was derived from investments. In the taxable year 1948 he was eighty-three years of age. During the summer of 1947 petitioner underwent an operation for a prostate gland condition which was performed in two stages. He was confined in the hospital for a period of about two months and was discharged in September or October of 1947. Petitioner suffered some discomfort after the operation in 1947, but in the year 1948 had recovered from the operation as well as any person that age could have been expected to recover. However, during the years immediately prior to the operation, he went out daily, and took his principal meal in a restaurant *311 and personally prepared the other meals for himself. Petitioner lived alone, but a short time prior to the operation petitioner's family physician, Dr. Leo Lynch, advised that someone be retained in petitioner's home to look after him. Petitioner hired Nora Hurley at a salary of $45 a week. She came to live in petitioner's home about June 16, 1947, and in order to retain her services her employment was continued while petitioner was hospitalized. Mrs. Hurley was not a registered nurse or a licensed practical nurse and had no special qualifications for nursing, but she was able to render the kind of care which petitioner required. Mrs. Hurley was in her fifties. She prepared the meals for petitioner, served petitioner breakfast in bed and kept account of the times when petitioner was supposed to take the medicines and pills, which had been prescribed. Mrs. Hurley also saw to it that petitioner's room and bed linen, sometimes soiled due to incontinence, were kept clean, but petitioner continued to have a cleaning woman come in for two days a week to do the general house cleaning. Petitioner used a cane when outside the house. The only time the petitioner left the house was to go, *312 on occasions, to church, which was less than two blocks away or to go for a drive with his brother and nephew. The drive, which usually occurred on the average of once a week, would last about two hours and would be to some restaurant or other place nearby. The petitioner lived in a brownstone house in the Bedford section of Brooklyn. The house had four stories; on the ground floor there was a kitchen and lavatory, on the second floor was a parlor, on the third floor there were two bedrooms and a bath and on the fourth floor another bedroom. Mrs. Hurley originally lived in the bedroom on the fourth floor, but during the year 1948 moved down to the third floor on which petitioner had his bedroom in order to be near the petitioner when he required aid. The petitioner generally woke up about nine in the morning and was served his breakfast in bed. After dressing sometimes with the aid of Mrs. Hurley, he would usually descend to the second or ground floor once a day and prior to lunch would receive a visit from his brother generally to discuss business affairs as the brother had his power of attorney. About eleven thirty the brother would depart and the petitioner would have a very *313 light lunch. Petitioner would take a nap in the afternoon, usually have a light supper in his bedroom, served about six in the evening, read the evening paper and retired about seven. The petitioner was able to go up and down stairs and able to go to the lavatory unattended except during weak spells when he was aided in performance of execretory functions by Mrs. Hurley. The petitioner's mind was good; he did not suffer any unusual illnesses during the year 1948. On one occasion Mrs. Hurley became alarmed and called the doctor because the heat had been too much for petitioner; on this occasion petitioner's condition was extremely weak but he recovered advanced in years as he was. The petitioner also suffered from hypertension due to hardening of the arteries. Petitioner claimed the following medical expenses in the taxable year of 1948: Dr. Martin Tuby
$ 10
Dr. Leo Lynch
15
Dr. Paul Leprohon
20
Nora Hurley, nurse, attendant
2,340
Total
$2,385
Petitioner had adjusted gross income in 1948 of $6,581.78. Petitioner died in March 1949. In addition to the stipulated facts we find the following: When the petitioner was discharged from the hospital in the *314 latter part of 1947, and thereafter during the year 1948, he was not a well man and was in such a feeble condition that he had to have someone look after him. His gait was unsteady and there was danger that he might stumble and fall and become permanently disabled. When he went to church he generally had a man with him to guide him. He had arteriosclerosis (hardening of the arteries) in an advanced stage, and the cerebral hemorrhage, which caused his death, was primarily the result of the arteriosclerosis. His physician felt that "constant attendance of an attendant was necessary" and advised that he should not be left alone. Some of the services which Mrs. Hurley performed for him were similar to those which a nurse would ordinarily perform for a patient under her care. Of the salary of $2,340, paid by the petitioner during 1948, for services rendered by Nora Hurley, not less than $1,535 was paid for services of the type that would be rendered by a nurse and constituted a reasonable allowance for medical expenses. The pertinent provision of the Internal Revenu Code is Section 23 (X). It provides that in computing net income there shall be allowed as a deduction: Medical, Dental, *315 Etc., Expenses. - Expenses paid during the taxable year, not compensated for by insurance or otherwise, for medical care of the taxpayer, his spouse, or a dependent specified in section 25 (b) (3), to the extent that such expenses exceed 5 per centum of the adjusted gross income. The deduction shall not be in excess of $1,250 multiplied by the number of exemptions allowed under section 25 (b) for the taxable year (exclusive of exemptions allowed under section 25 (b) (1) (B) or (C)), with a maximum deduction of $2,500, except that the maximum deduction shall be $5,000 in the case of a joint return of husband and wife under section 51 (b) The term "medical care", as used in this subsection, shall include amounts paid for the diagnosis, cure, mitigation, treatment, or prevention of disease, or for the purpose of affecting any structure or function of the body (including amounts paid for accident or health insurance). Section 29.23 (X)-1 of Regulations 111 provides that allowable deductions under Section 23 (X) "will be confined strictly to expenses incurred primarily for the prevention or alleviation of a physical or mental defect or illness." The respondent determined that one-third *316 of the salary of $2,340 paid by the petitioner to Nora Hurley during the year 1948, or $780, was a reasonable allowance for medical expenses. The petitioner concedes that some of the services rendered by Nora Hurley were of a personal nature. Petitioner urges, however, that her salary was incurred primarily for the alleviation of his physical condition, and that the portion of the amount paid to her which was attributable to medical care was not less than an amount which, when added to the $45 paid by the decedent to doctors, would warrant the maximum deduction of $1,250 allowed by Section 23 (X) for medical expenses. We agree with the petitioner. The question presented is one of fact. While it is impossible from the record to determine accurately the proportion of Nora Hurley's salary that was attributable to medical care and to services of a personal nature, we are convinced, and have found as a fact, that not less than $1,535 of the total amount paid to her during 1948 constituted a reasonable allowance for medical expenses. Cf. (C.A. 2). This amount, when added to the $45 paid to doctors and allowed by the respondent, *317 is at least $1,250 in excess of 5 per cent of the petitioner's adjusted gross income. Petitioner is, therefore, entitled to the maximum deduction of $1,250 for medical expenses allowed by Section 23 (X). Decision will be entered for the petitioner.