COMMISSIONER OF INTERNAL REV-
ENUE, Petitioner,

v.

MULTNOMAH OPERATING COMPANY,
Respondent.

No. 15370.

United States Court of Appeals
Ninth Circuit.

Sept. 30, 1957.

Charles K. Rice, Asst. Atty. Gen., S. Dee Hanson, Robert N. Anderson, Attys., Dept. of Justice, Washington, D. C., for petitioner.

Harry Henke, Jr., Paul W. Steere, William E. Evenson, Jr., Seattle, Wash., for respondent.

Before HEALY and FEE, Circuit Judges, and MURRAY, District Judge.

HEALY, Circuit Judge.

This is an appeal by the Commissioner from a decision of the Tax Court allowing, as reasonable business expenses, deductions for payments made by respondent taxpayer to three of its stockholders for the years 1948 and 1949. The payments were made pursuant to a written contract entered into in 1944 which extended the term of a similar contract that had been made in 1931. These payment contracts arose under circumstances now to be stated.

In 1930 representatives of three theretofore competing hotel operating organizations joined in obtaining a fifteen-year lease of the Multnomah Hotel, Portland, with the intent of assigning such lease to a new corporation to be formed by the three. Negotiations were carried on over a period of months consisting of numerous conferences and trips between Seattle and Portland by S. W. Thurston, representing Maltby-Thurston Company (hereafter Maltby), P. G. Schmidt, representing Pacific Coast Investment Company (hereafter PCI), and one F. A. Dupar. These negotiations were arm's length with Hauser & Co., owners of the hotel. At the insistence

of Hauser a covenant was placed in the lease forbidding assignment of the lease or operation of the hotel except by a company controlled by Maltby, PCI, and Dupar. The reason for the Hauser Company's insistence on this covenant appears to have been the extensive and successful experience of the three in hotel operations. The lease called for minimum rental payments of $7,000 per month and a per cent of the profits, if any, from the proposed operation. The negotiations were concluded in 1931, at which time the hotel was leased to Maltby to hold temporarily until the new corporation could be formed.

Pursuant to plan the Multnomah Operating Company, respondent here, was formed with Maltby holding 50 per cent of the stock, PCI 25 per cent, and Dupar 6.8 per cent. [The remaining stock was held by Dupar's brother and two other shareholders, who, so far as the record shows, were not under Dupar's direction or control.] The lease was assigned by Maltby to Multnomah for a nominal consideration, and as security for performance of the lease $75,000 worth of Maltby stock was issued for deposit with Hauser & Co. Maltby, PCI, and Dupar entered into an agreement to guarantee payments of the face amount of this stock in case of default. Dupar and PCI each underwrote 25 per cent of the face amount, with Maltby guaranteeing the rest.

At the time of this assignment an agreement was entered into between Multnomah on the one hand and Maltby, PCI, and Dupar on the other whereby Multnomah agreed to pay $30,000 annually to the three, Dupar to receive $7,500, PCI $7,500, and Maltby $15,000. Payments under the agreement were started shortly after the beginning of operations and have since continued. Multnomah has always deducted these payments as a business expense.

From 1931 until 1944 Thurston, Dupar, and Schmidt acted as the principal officers of taxpayer. As president Thurston drew a salary of $4,500, and Dupar and Schmidt received $2,250 each. In 1944 one Kenney, representing PCI, replaced Schmidt; and salaries were increased to $10,200 and $4,500 respectively.

Business conditions in the early 1940's made it essential to secure a long-term renewal of the lease, which would otherwise have expired in 1946. Negotiations were carried out by Thurston and Dupar and concluded in 1944 with a new twenty-year lease containing the same terms and conditions as the previous lease, except that the minimum rental was raised to $8,000 per month. At this time a new agreement was entered into by taxpayer Multnomah with Maltby, PCI, and Dupar providing for the continuation of the annual payment to them of $30,000, referred to above. The taxpayer continued to make the payments under this agreement and to deduct the same as a business expense. As already indicated, the deductions for the years 1948 and 1949 were disallowed by the Commissioner; hence the proceedings for review instituted in the Tax Court.

In those proceedings taxpayer defended the deductions as being in the nature of rent, hence deductible under § 23(a) (1) (A) of the Internal Revenue Code of 1939, 26 U.S.C.A. § 23(a) (1) (A), the relevant portions of which are shown on the margin.[1] The Commissioner contended and contends that the payments were in the nature of a dividend, and

---

1. "23. Deductions from gross income.
* * *
"(a) Expenses.
"(1) Trade or business expenses.
"(A) In general. All the ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business, including a reasonable allowance for salaries or other compensation for personal services actually rendered; traveling expenses (including the entire amount expended for meals and lodging) while away from home in the pursuit of a trade or business; and rentals or other payments required to be made as a condition to the continued use or possession, for purposes of the trade or business, of property to which the taxpayer has not taken or is not taking title or in which he has no equity * * *"

thus not deductible. The Tax Court took the view that the payments were not classifiable as rentals, but it concluded that "whatever the petitioner has named the amounts sought to be deducted, they were compensation for services rendered in the ordinary course of petitioner's business within the meaning of section 23(a) (1) (A)." It thought that "in light of the long experience of all three payees in the hotel business and in view of their efforts in the negotiating of the original lease and the efforts of Dupar and Maltby in the negotiating of the renewal thereof, together with other services required of one or the other of them," the compensation was not unreasonable. Accordingly it held the payments deductible.

 The Commissioner applied for a rehearing before the full Tax Court, and the application was denied. In this court it is contended that there was error below in deciding the case for the taxpayer on a ground not put forward by the latter. It is argued further that the deductions were not allowable on any ground. We are urged either to reverse the Court's holding or to remand the cause so that the Service may have opportunity to present evidence as to whether or not the payments constitute compensation, and if so whether the compensation is reasonable.

The Tax Court predicated its decision on § 23(a) (1) (A), cited above, the same provision upon which the taxpayer relied throughout; and it is difficult to see how the Commissioner was substantially disadvantaged by the difference in nomenclature. The circumstances were fully developed and we are of the view that a remand for the taking of further evidence is unwarranted. Many of the facts were stipulated, and all material documents were introduced in evidence. Thurston and Dupar testified at length concerning the services performed, and no objections were made to the introduction of such evidence. Nor does the Commissioner suggest the existence of any other evidence concerning the nature of the payments. His claim appears

to be rather that he was deprived of the opportunity to produce evidence of comparative situations tending to show that the payments herein were unreasonable. However, the case would seem to be in a class by itself; and it is more than doubtful whether comparative situations exist. Decisions brought to our attention by the Commissioner involve situations remote from the present.

The Tax Court's determination that the payments in question were reasonable compensation for business services is basically a finding of fact. We are of opinion that the finding is not clearly erroneous, and the decision below is accordingly affirmed.