Daniel S. W. and Constance L. Kelly v. Commissioner.
Kelly v. Commissioner
Docket No. 352-68.
United States Tax Court
T.C. Memo 1969-231; 1969 Tax Ct. Memo LEXIS 64; 28 T.C.M. (CCH) 1208; T.C.M. (RIA) 69231; October 30, 1969. Filed *64 In 1963 petitioner, who resided in Milwaukee, went to New York on a business trip and while there had an emergency appendectomy. The surgeon who performed the operation advised the petitioner and his wife that the nursing services were poor and that it was necessary that the wife go to New York. She, therefore, went to New York for the purpose of assisting in nursing the petitioner and did in fact so assist. After about two weeks, the petitioner was discharged from the hospital but the surgeon required that he stay in a hotel in New York to convalesce before returning home. While in the hotel petitioner's wife rendered all the necessary nursing care. Held: That the cost of the wife's transportation (including meals, taxi fares, and tips) to and from New York and the cost of her transportation to and from the hospital while in New York constituted "transportation primarily for and essential to" medical care and are includable in computing the petitioner's deduction for medical expenses under section 213 of the Internal Revenue Code of 1954. Held, further: That the cost of the wife's meals and lodging while in New York, and the cost of the petitioner's meals *65 and lodging while in the hotel in New York were personal, living, or family expenses, and not expenses for medical care within the meaning of section 213 of the Code. Harold P. Southerland, Marshall & Isley Bank Bldg., 780 North Water St., Milwaukee, Wis., for the petitioners. Alan B. Shidler, for the respondent. *66 ATKINS
Memorandum Findings of Fact and Opinion ATKINS, Judge: The respondent determined a deficiency in income tax for the taxable year 1963 of $581.91. The issues for determination are whether the cost of petitioner's lodging and meals at a hotel in New York while convalescing from an operation, the cost of his wife's transportation from their home in Milwaukee to New York and return, the cost of her transportation to and from the hospital while in New York, and the cost of her meals and lodging while in New York constitute medical expenses within the meaning of section 213 of the Internal Revenue Code of 1954. Findings of Fact Some of the facts were stipulated and are incorporated herein by this reference. Petitioners, Daniel S. W. Kelly and Constance L. Kelly, are husband and wife and were such during the year 1963. At the time of the filing of the petition herein, petitioners were residents of Milwaukee, Wisconsin. They filed their joint Federal income tax return for the taxable year 1963 with the district director of internal revenue at Milwaukee, Wisconsin. Daniel S. W. Kelly (hereinafter referred to as petitioner) was employed during *67 1963 by a firm in Milwaukee, Wisconsin, as an electrical engineer, specializing in sales and marketing. In 1963 he was 63 years old. On September 8, 1963, petitioner flew from Milwaukee to New York City on a business trip to attend meetings of the Electronics Industries Association. Upon arrival in New York City petitioner stayed in a room at a hotel. While attending business meetings, the petitioner became ill on September 11, 1963, and entered the Polyclinic Hospital in New York City. There he was examined by the hospital's chief surgeon who diagnosed the illness as acute appendicitis and recommended immediate surgery. An appendectomy was performed on petitioner in the evening of September 11, 1963. Before the surgery the surgeon asked petitioner whether his wife could come to New York, stating that nursing services were poor and that he thought it important that she come. Petitioner telephoned his wife and talked with her about coming to New York City. She was quite upset and deeply concerned about his health and welfare. At petitioner's request the surgeon telephoned petitioner's family physician in Milwaukee and explained the circumstances to him. The family physician then *68 advised petitioner's wife that, in view of the surgeon's statement as to the nursing situation, she should leave for New York City immediately. Around midnight of September 11, 1963, petitioner's wife received a call from the surgeon who told her that petitioner had come through his surgery very well. She asked him whether it was 1209 necessary for her to go to New York and he insisted that it was. Petitioner's wife made plans to fly to New York, but because of a fear of flying she changed them. Instead, she left Milwaukee by train in the afternoon of September 12, 1963, and arrived in New York City in the morning of September 13, 1963. Her train fare to New York City was $118.83. In addition, petitioner's wife paid for meals, cab fare, and tips, totalling about $10. After his surgery, petitioner remained in a private room in the Polyclinic Hospital until he was discharged on September 28, 1963. The surgeon advised petitioner that he should have continuous private nursing service for a while after surgery, and made all of the arrangements for private duty nursing care. The hospital had a department where nurses registered for such nursing employment. Registered nurses were *69 requested for petitioner but when they were not available, licensed practical nurses were assigned to him. Private duty nursing services were supplied the petitioner on the basis of three eight-hour shifts per day. The hospital records show that, for forty-three out of the forty-eight shifts during which petitioner was in the hospital, he was supplied with private duty nurses. Eight of these forty-three shifts were handled by registered nurses and the balance by licensed practical nurses. The cost of the services of these nurses constituted separate charges from the hospital bill and were paid separately by petitioner. In four instances private duty nurses were unavaliable for the 4:00 p.m. to midnight shift, and nursing services were provided petitioner by the hospital as part of its floor care. The private duty nurses who were employed by petitioner all rendered him ordinary nursing services, including feeding him, taking care of the bedding, bed pans, urinals, etc., giving him medication, changing his bandages, and taking his temperature. Upon her arrival in New York City on September 13, petitioner's wife rented a hotel room in the same hotel in which petitioner had initially *70 stayed, and visited the petitioner in the hospital that day. Every day after her arrival she visited the petitioner in the hospital from about 9:30 a.m. to 8:30 p.m. The distance from the hotel to the hospital was about 14 blocks and petitioner's wife made the round trip by taxi at a cost of about $2.50 each day. On the first two days she merely visited the petitioner and gave him moral support. She inquired as to the petitioner's condition and found out from the doctors what the nurses' duties were so that she could oversee them in the proper performance thereof. During these two days petitioner was feeling reasonably well and was capable of eating semi-soft food. On September 15, 1963, petitioner's condition worsened as a result of an infection in his wound. When his wife arrived at the hospital that day she found the petitioner feverish and incoherent. She became alarmed at this and upon finding out that the private nurse on duty had done no more than record this on the chart, she insisted that a doctor be called. As a result, petitioner was placed in isolation and treated for infection. At this time petitioner took nourishment intravenously and was also given oxygen. After *71 this incident, petitioner's wife assumed a more active role in attending to him because she lacked confidence in the nurses. She began performing some of the duties which she had previously overseen the nurses in doing. She fed him, handled the bed pans and urinals, bathed his head when he was hot, gave him medication, changed his bandages, took his temperature, and continued to oversee the nurses in the performance of their duties. The petitioner and his wife did not consider the nursing services adequate. The nurses were out of the room about 25 percent of the time. On one occasion a dressing which had been applied by the nurse fell off and was replaced by petitioner's wife. On another occasion the nurse left the room when a fire alarm sounded leaving petitioner's wife to close the doors and windows of the room as instructed by the floor nurse. And on another occasion petitioner's wife found that the nurse had hidden petitioner's medication, giving as the reason that petitioner would be better off without it. On September 28, 1963, petitioner was discharged from the Polyclinic Hospital because the surgeon told him that the hospital was in need of the room. The surgeon refused to *72 agree to petitioner's suggestion that he return to Milwaukee, in view of the fact that the wound was still draining, but advised that it would be all right for petitioner to go to a hotel as long as his wife was present to attend him. It was arranged that the petitioner would see the surgeon at his office until such time as 1210 it was decided that petitioner was able to leave New York City. The petitioner was still so weak as to require assistance in moving about, and when he left the hospital for the hotel it was necessary that he be assisted by his wife and a licensed practical nurse. The room at the hotel that petitioner rented after leaving the hospital was an ordinary hotel room, with no special facilities. There were no arrangements made to provide for licensed nursing care during his stay. The surgeon had given petitioner's wife the bandages and medication necessary to care for petitioner's medical needs. During his stay in the hotel the petitioner's condition was such that his wife had to assist him in walking, bathing, and dressing himself. She also gave him his medication and changed his bandages. His appetite was normal and he had no special diet except that it was *73 limited to soft foods. While at the hotel on September 29, 1963, the petitioner's temperature rose and his wife consulted the hotel doctor who prescribed some antibiotics. Petitioner's wife read his temperature every two hours and administered the new medication every four hours. By September 30, 1963, petitioner's temperature declined and he regained some mobility. The cost of the services of the hotel doctor was not included in the petitioner's hotel bill, but was paid directly to the doctor. Petitioner saw the surgeon four times at his office. Each time he was accompanied by his wife because he was incapable of going alone. The distance was about 40 blocks and each round trip taxi fare was about $4. On petitioner's last visit the surgeon advised him that, although his wound was still draining and he was unsteady on his feet, it would be permissible for him to return home as long as his wife accompanied him and attended to him. On October 5, 1963, petitioner left the hotel to return to Milwaukee. He and his wife went to the railroad station by taxi, where his wife got a porter and wheelchair to help petitioner board the train. On the train his wife attended to him, giving him *74 medication and changing his bandages. In Chicago it was necessary to change trains, again requiring the assistance of a porter and wheelchair. Petitioner's wife's train fare from New York City to Milwaukee was $97.46. In addition, about $10 was expended for the taxi, tips for the wheelchairs and porters, and about $5 for her dinner on the train. Petitioner's employer paid for his transportation back to Milwaukee. He returned to work on October 28, 1963. While staying at the hotel in New York prior to petitioner's release from the hospital, his wife spent $288 for her room and a total of $119.39 in the hotel restaurant. Included in this, however, is a charge of $24.34 incurred when two friends also dined with her. Of this amount one-third was for her meal. Petitioner's wife did not take all of her meals at the hotel before her husband's release from the hospital and spent additional amounts for food. During his stay in the hotel after his release from the hospital, petitioner spent $190.75 for the room occupied by him and his wife. During this time petitioner and his wife ate all of their meals together at the hotel. The hotel bill for meals was $224.01. Included in this amount *75 were two charges for $44.74 and $50 when petitioner and his wife also dined with two friends. One-half of these amounts were for meals of the petitioner and his wife. The total hotel bill for the period from September 13, 1963 to October 5, 1963, was $971.50 which included $478.75 for the room, $343.40 for restaurant, and an amount of $149.35 which included various items such as telephone and long distance calls, laundry, barber, cigars, etc. Of this total bill of $971.50, petitioner paid $849.50 in 1963 and the balance in 1964. The petitioner has been married to his wife for over 30 years. She is a housewife, and at all times in the past petitioner has supplied her with support. She has had no training or employment as a nurse. On prior occasions when petitioner was ill at home she attended to and cared for him, feeling it to be part of her obligation as a wife to do so and wanting to help petitioner in any way she could. On the joint income tax return for 1963 the petitioner, in computing his medical expense deduction, claimed as medical expenses, among other things, the following amounts as expenses of his wife (except as noted) in connection with his illness in New York: *76 Railroad fare to New York
$118.83
Biltmore Hotel, New York - lodging for wife and self during convalescence
849.50
Railroad fare New York to Milwaukee
97.46
Car fares
37.50
Meals for 25 days
250.00 1211 The petitioner was not reimbursed for any of the claimed expenditures by insurance, his employer, or otherwise. In the notice of deficiency the respondent recomputed the allowable deduction for medical expenses, disallowing all of the foregoing items as not representing medical expenses. The petitioner's wife went to New York for the purpose of assisting in nursing the petitioner. Her transportation to New York and return and her transportation to and from the hotel in New York were primarily for and essential to petitioner's medical care. Opinion The petitioner contends that in computing the deduction to which he is entitled for the taxable year 1963 for medical care under section 213(a) of the Internal Revenue Code of 1954, he is entitled to include in "medical care", as defined in section 213(e) of the Code, [1] as it existed in 1963, the amounts expended for railroad fare for his wife in travelling from Milwaukee to New *77 York and return (including taxi fares, meals, and tips), her meals and lodging while in New York, her taxi fares in going from the hotel to the hospital and return, the amount which he paid for his own lodging and food while in the hotel in New York after having been discharged from the hospital, and the amount which he expended for taxi fares from the hotel to his doctor's office and return while in New York. [2]
*78 The respondent on brief concedes that the petitioner is entitled to include in computing his medical expenses the amount of $16, which we have found the petitioner expended for taxi fares in going from the hotel to the doctor's office and return, but contends that none of the other expenses claimed by petitioner constituted expenses of medical care, but, rather, constituted personal, living, or family expenses which are not deductible, pursuant to the provisions of section 262 of the Code. We will first consider the cost of petitioner's hotel accommodations and his meals while he was in New York convalescing from his surgery after release from the hospital. Section 262 provides that personal, living, or family expenses are not deductible unless expressly provided for. In Commissioner v. Bilder, 369 U.S. 499, the Supreme Court held that it was the purpose of Congress in enacting section 213(e)(1)(A) of the Internal Revenue Code of 1954 to preclude the deduction of all personal or living expenses incurred by a patient incidental to medical treatment other than the cost of transportation, referring to the Congressional Committe Reports (H. Rept. *79 No. 1337, 83rd Cong., 2d Sess., p. A60 and S. Rept. No. 1622, 83rd Cong., 2d Sess., p. 219-220). See also Max Carasso, 34 T.C. 1139, affd. (C.A. 2) 292 F. 2d 367; Martin J. Lichterman, 37 T.C. 386; and Robert M. Rose, 52 T.C. 521. The Committee reports make it clear that it was not intended to change existing definitions of medical care to deny deduction of cost of food or lodging provided as a part of a hospital bill. Section 1.213-1(e)(1) [3] of the Income Tax 1212 Regulations recognizes that the cost of meals and lodging for a patient in a hospital constitutes cost of medical care, and that under some circumstances cost of meals and lodging in an institution other than a hospital may constitute cost of medical care. The regulations further provide, however, that such institution must be regularly engaged in providing medical care within the contemplation of the statute and that a principal reason for the taxpayer's presence in the institution is the availability of medical care in the institution. *80 Petitioner argues that he would have remained in the hospital but for the surgeon's request that he vacate his room because the hospital was in need of the use of the room, that while in the hotel he remained under the care of his surgeon and that his wife performed for him the necessary practical nursing services. He therefore maintains that there was no substantial difference between the cost of his meals and lodging in the hotel and the cost of such items which he would have incurred in the hospital, and that therefore the hotel should be considered as the equivalent of a hospital. We cannot agree with this contention. The hotel was not regularly engaged in providing medical care. Although the hotel had a doctor available for the convenience of its guests, the charge for this service was paid directly by petitioner to the doctor. The hotel furnished no special dietary meals. The room which petitioner occupied was an ordinary hotel room, no more like a hospital room than any other hotel room. We conclude therefore that the living expenses were not incurred in the type of institution contemplated by the regulations, and we therefore approve the respondent's determination that such *81 living expenses of the petitioner do not constitute expenses for medical care. See Robert M. Rose, supra. The petitioner's contention that the amounts which he expended for his wife's meals and lodging while she was in New York should properly be considered as medical expenses is based upon the premise that the services which she performed for him were necessary in order that he have adequate nursing care both at the hospital and in the hotel. However, we consider such expenses as personal, living, or family expenses, even though her services were necessary to provide him with adequate nursing care. The instant case is analogous to Robert M. Rose, supra, in which we held that the amounts paid by the taxpayer for his wife's living expenses while away from home rendering medical care to their 10year old daughter did not constitute expenses for medical care. We stated in part: Petitioners also seek to deduct Doris' living expenses under section 213 which were incurred while she was staying with Suzanne at the prescribed locations. They assert that Doris' presence was indispensable because of Suzanne's age and the need for certain services which Doris performed *82 as a quasi-nurse. We have disallowed the deduction of such expenses under similar circumstances. Max Carasso, supra; Leo R. Cohn, supra. Although their position both at trial and on brief is not clear, petitioners may have been arguing that the payments made by Robert to his wife, Doris, for her living expenses constituted compensation for nursing services. We hold that these payments were primarily for the purpose of providing support for his wife, and as such do not constitute a medical expense. That Doris provided devoted and tender care and attention to Suzanne is clear, but she was not being paid for those maternal services by her husband. We approve respondent's determination that the cost of meals and lodging of petitioner's wife while in New York do not qualify as expenses for medical care. [4] 1213 There remains to be considered the *83 question of whether the cost of transportation of petitioner's wife from Milwaukee to New York and return and the cost of her transportation by taxi between the hotel and the hospital are medical expenses for purposes of computing the deduction under section 213. Section 213(e)(1)(B) defines "medical care" as amounts paid for transportation primarily for and essential to medical care referred to in section 213(e)(1)(A). It is the respondent's position that the petitioner's wife undertook the travel from Milwaukee to New York voluntarily and exclusively because of her concern as a wife for his health and to fulfill her marital responsibility of giving petitioner moral support and aid in the general improvement of his health. He therefore contends that her transportation to and from New York and while there were [was] not primarily for and essential to medical care but were [was] primarily and essentially for personal reasons. While the wife was motivated in part by concern for, and her duty toward, the petitioner, we think that the evidence establishes, and we have found as a fact, that her transportation was primarily for and essential to medical care within the meaning of the *84 statute. The New York surgeon who performed the appendectomy advised the petitioner's wife that because of poor nursing services it was necessary that she come to New York. The family physician in Milwaukee also advised that she go immediately in view of the representation made by the New York surgeon. We find it unnecessary to consider whether the available nursing services at the hospital were in fact inadequate, although we have recounted in the Findings of Fact some instances of apparent neglect of duty on the part of some nurses. The important facts are that petitioner's wife did, pursuant to advice of the doctors, go to New York for the purpose of assisting in nursing her husband, that while he was in the hospital she did assist in nursing him (being there each day from about 9:30 a.m. to about 8:30 p.m.), and that while he was in the hotel convalescing after being discharged from the hospital she alone rendered the necessary nursing services for him. Since, in our opinion, her trip to New York was primarily for and essential to the medical care of the petitioner, we hold that the cost of transportation both to New York and return to Milwaukee, including tips, taxi fares, *85 and her meals en route, as well as the taxi fares to and from the hospital while in New York, constitute expenses of medical care within the meaning of the statute. Martin J. Lichterman, supra; Robert M. Rose, supra; and Morris C. Montgomery, 51 T.C. 410, on appeal (C.A. 6). See also Rev. Rul. 58-533, 1958-2 C.B. 108. Decision will be entered under Rule 50. Footnotes
1. Section 213(e) of the Code as it existed in 1963 defined the term "medical care" as meaning amounts paid: (A) for the diagnosis, cure, mitigation, treatment, or prevention of disease, or for the purpose of affecting any structure or function of the body (including amounts paid for accident or health insurance), or (B) for transportation primarily for and essential to medical care referred to in subparagraph (A). ↩
2. On brief petitioner has altered the amount of claimed expenses for his wife's transportation to and from New York, her living costs there, and his costs after he was discharged from the hospital. He now makes no claim for the $149.50 of the total hotel bill which represented charges apart from meals and lodging. He also is no longer claiming the amount of $63.71 attributable to the meals which friends ate in the hotel and for which he paid. On the other hand, petitioner is asserting a new claim for $24 for expenses incidental to his wife's transportation to New York and back and for $16 in taxi fares which he paid in visiting the surgeon's office. Thus, petitioner now claims a total of $240.29 as the cost of his wife's transportation to and from New York, a total of $824.75 for her hotel accommodations and meals and $37.50 for her taxi fares to and from the hospital, and a total of $199.69 for his own living expenses while at the hotel in New York. The total of all of these is $1,302.23. However, petitioner is apparently claiming only $1,180.23 as amounts expended for medical care in 1963, since $122 of the cost of the hotel room was not paid until 1964.↩
3. Section 1.213-1(e)(1) of the regulations provides in part: (v) The cost of in-patient hospital care (including the cost of meals and lodging therein) is an expenditure for medical care. The extent to which expenses for care in an institution other than a hospital shall constitute medical care is primarily a question of fact which depends upon the condition of the individual and the nature of the services he receives (rather than the nature of the institution). A private establishment which is regularly engaged in providing the types of care or services outlined in this subdivision shall be considered an institution for purposes of the rules provided herein. In general, the following rules will be applied: (a) Where an individual is in an institution because his condition is such that the availability of medical care (as defined in subdivisions (i) and (ii) of this subparagraph) in such institution is a principal reason for his presence there, and meals and lodging are furnished as a necessary incident to such care, the entire cost of medical care and meals and lodging at the institution, which are furnished while the individual requires continual medical care, shall constitute an expense for medical care. * * *. (b) Where an individual is in an institution, and his condition is such that the availability of medical care in such institution is not a principal reason for his presence there, only that part of the cost of care in the institution as is attributable to medical care (as defined in subdivisions (i) and (ii) of this subparagraph) shall be considered as a cost of medical care; meals and lodging at the institution in such a case are not considered a cost of medical care for purposes of this section. * * *↩
4. A portion of the amount claimed for the wife's meals, namely, $250 for meals outside the hotel during the 15-day period prior to petitioner's release from the hospital, is based upon the wife's estimate. In view of our conclusion above, we find it unnecessary to find the total amount expended for the wife's meals.↩