Walter D. Bye and Catherine A. Bye v. Commissioner.
Bye v. Commissioner
Docket No. 6197-70 SC.
United States Tax Court
T.C. Memo 1972-57; 1972 Tax Ct. Memo LEXIS 198; 31 T.C.M. (CCH) 238; T.C.M. (RIA) 72057; February 29, 1972, Filed Joseph P. Monaghan, 2218 Elm, Butte, Mont., for the petitioners. Joe K. Gordon, for the respondent. FEATHERSTON
Memorandum Findings of Fact and Opinion FEATHERSTON, Judge: Respondent determined a deficiency in petitioners' Federal income tax for 1967 in the amount of $715.63. In an amendment to his answer, respondent alleges that the deficiency is $829.63. The issues for decision are as follows: (1) Whether petitioner Walter D. Bye is entitled to dependency exemption deductions for 1967 for his niece and her seven children; and (2) Alternatively, whether he is entitled to medical expense deductions equal to the cost of food and lodging provided for his niece and her children during 1967. Findings of Fact Walter D. Bye (hereinafter referred to as petitioner) and Catherine A. Bye (hereinafter Catherine), husband and wife, filed a joint Federal income tax return for 1967 with the district director of internal revenue, Helena, Mntana. They resided in Butte, Montana, at *200 the time they filed their petition. For many years, Catherine has suffered from a mental disorder which has caused her to be hospitalized from time to time.d Because of this illness, petitioner was prevaile upon by public officials again to place Catherine in the Montana State Hospital during the summer of 1966. Believing that her prior hospital stays had not alleviated Catherine's condition, petitioner wanted this stay to be as short as possible and immediately began to arrange for her release. In order to obtain her release, he was required by the hospital authorities to arrange for a woman to reside in his home to look after Catherine. Unable to obtain the assistance of a nurse or any other woman living in the vicinity of his farm, petitioner talked with his niece, Betty Halvorsen (hereinafter Betty), who then lived in Canada, concerning possible assistance in caring for Catherine. He proposed that Betty and her seven children, ranging downward in age from 14, move to his farm and help him care for Catherine; in return, he agreed to pay for their board and lodging for one year. As part of the arrangment, the older children were to assist in doing the farm chores. Betty's husband *201 was to continue 239 to work in Canada as a carpenter, accumulating his wages, and after the end of the first year petitioner and Betty's family were to operate the farm and share in its profits. Betty accepted this proposal. Shortly after Betty arrived at the farm in September 1966, Catherine was released from the hospital and returned home. During the ensuing year, in addition to helping care for Catherine, Betty cooked, ran errands, and did other chores required for the operation of the farm. Her older children also helped on the farm. The cost of the food and lodging which petitioner furnished Betty and her children during 1967 was $2,700. Betty was unable to obtain the visas required for continued residence in the United States. In the summer of 1967, she was notified by the immigration authorities that she and her family would not be permitted to remain in this country. On August 1, 1967, she and the children left the farm and returned to Canada. Following Betty's departure for Canada, Catherine reentered the State hospital. In his return for 1967, petitioner claimed dependency exemption deductions for Betty and her seven children. From the operation of his farm, his *202 return shows that he had cash receipts of $12,373.25 and that he incurred operating expenses in the amount of $6,124.64 during that year. Respondent determined "that the dependency credit exemptions claimed on * * * [petitioner's] return for * * * [his] seven grandnieces and grandnephews are disallowed for the reason that they were not * * * [his] dependents within the meaning of Section 152 of the Internal Revenue Code." Opinion Initially, we note that respondent is correct in his determination that petitioner is not entitled to dependency exemption deductions for his seven grandnieces and grandnephews. Section 151 [1] provides that such deductions are allowable only for "dependents" as defined by section 152. Under that definition, the supported individual must either possess one of the prescribed relationships to the taxpayer or, "for the taxable year of the taxpayer," be a member of the taxpayer's household and have the taxpayer's home as his "principal place of abode." Sec. 152(a) (9). The relationships prescribed by section 152 are exclusive, Tilney v. Commissioner, 182 F. 2d 1009 (C.A. 5, 1950), affirming a Memorandum Opinion of this *203 Court, and they do not include grandnieces and grandnephews. Moreover, principal place of abode provision requires a showing that the supported individual resided with the taxpayer during the entire taxable year. Sec. 1.152-1 (b), Income Tax Regs.; Robert Woodrow Trowbridge, 30 T.C. 879 (1958), affirmed per curiam 268 F. 2d 208 (C.A. 9, 1959). Since Betty and her children returned to Canada on August 1, 1967, petitioner does not meet this requirement with respect to the children. Further, we are constrained to agree with respondent, as he alleges in his amended answer, that petitioner furnished the board and lodging for Betty and her children as compensation for the services which they rendered rather than as support for dependents. Petitioner's whole purpose in asking Betty and her family to live with him on the farm was to have someone to help care for Catherine as required by the hospital authorities and, incidentally, to have someone to help in carrying on the farmwork. His offer was not motivated by charity, affection, *204 or legal or moral obligation; rather, it stemmed from a desire to secure the help he needed. In these circumstances, a dependency exemption for Betty may not be allowed. Dorothy H. Limpert, 37 T.C. 447 (1961); William Thomas Hamilton, 34 T.C. 927 (1960). Petitioner's alternative claim to a medical expense deduction must be weighed in the light of section 213(a), which allows a deduction for the cost of "medical care," and section 213(e) (1) (A), which defines that term to include "the diagnosis, cure, mitigation, treatment, or prevention of disease." [2] That a mental disorder can be 240 a "disease" within the meaning of this language is no longer open to question. See Martin J. Lichterman, 37 T.C. 586 (1961); Hobart J. Hendrick, 35 T.C. 1223 (1961). Expenses to provide care of the mentally ill to keep them from harming themselves or others quite clearly fall within the deductible category. See sec. 1.213-1 (e) (1) (v) (a), Income Tax Regs.
*205 Where arrangements are made to provide care in a private home for an individual who is ill, drawing the line between deductible medical expenses within the meaning of section 213(a) and nondeductible personal, living, or family expenses within the meaning of section 262 is often a difficult task. See, e. g., Ochs v. Commissioner, 195 F. 2d 692 (C.A. 2, 1952), affirming 17 T.C. 130 (1951), certiorari denied 344 U.S. 827 (1952). Domestic services performed in a home to permit a household member who is ill to have complete rest are not medical care; however, expenses attributable to services rendered directly to such household member which are of the type that would otherwise be performed in a hospital qualify as medical expenses. [3] It is the nature of the services and the purpose for which they are rendered rather than the place where they are performed or the title of the person performing them that determine whether they constitute medical care within the meaning of section 213. C. Fink Fischer, 50 T.C. 164, 174 (1968), acq. 1969-2 C.B. xxiv; Max Carasso, 34 T.C. 1139 (1960), affd. 292 F. 2d 367 (C. *206 A. 2, 1961); George B. Wendell, 12 T.C. 161, 163 (1949); cf., also, sec. 1.213-1 (e) (1) (v), Income Tax Regs.; Rev. Rul. 58-339, 1958-2 C.B. 106. Petitioner's wife, Catherine, had suffered from a mental disorder throughout most of her married life. She had been hospitalized from time to time, and on at least one occasion she "ran away from the hospital." When she entered the State hospital in the early summer of 1966, she was not formally committed, but petitioner testified that the sheriff had made a trip to petitioner's farm and that "a little pressure was added." He also testified that "the authorities took my wife to the hospital. I was against it because she had been there before and * * * had gotten no help. This time *207 I didn't want her to go and she didn't want to go. She wanted to stay and fight it out. Whether we had a chance or not, I don't know." After Catherine had stayed in the hospital for 8 weeks, the authorities agreed to release her but only if petitioner would arrange for a woman to reside in the home to provide the needed care. After Betty came to the farm, Catherine was released from the hospital, and she remained at the farm until Betty returned to Canada. Sometime after Betty's departure, Catherine returned to the hospital where she remained until petitioner sold his farm and began devoting his full time to her care. From these facts, we conclude that, even though Betty was not a trained nurse, the services which she provided constituted medical care. Her services - apparently a form of custodial care - were the prescribed alternative to the continued maintenance of Catherine in the State hospital. Clearly, the cost of maintaining Catherine in the hospital would have constituted a deductible medical expense. Similarly, the cost of providing this substitute for the hospital care is a deductible medical expense. Respondent seeks to deny the deduction on the ground that Betty, in *208 addition to caring for Catherine, performed farm and household chores. We agree with respondent that a deduction is not allowable for the cost of services involving household duties. Sec. 262. However, we think the evidence clear that, even though Betty performed incidental household chores, petitioner incurred the food and lodging expenses in question primarily to obtain Betty's assistance in caring for his mentally ill wife and that care of the kind which she provided was required in order to obtain his wife's release from the State hospital. While the arrangement calling for petitioner to provide food and lodging for the children as well as Betty is perhaps an unusual one, the unchallenged testimony is that petitioner was unable to make any other arrangement. He could not locate a nurse or any other woman who was willing to perform the needed services. Although petitioner's agreement with Betty contemplated that she would eventually obtain an interest in the 241 farming operation, we think that was intended merely to make petitioner's offer more attractive and to assure the continued care which Catherine was likely to need. We hold that petitioner is entitled to a deduction *209 under section 213. [4]
The record as to the amount of the compensation paid to Betty is not wholly satisfactory, but we think it obvious that the food and lodging had a substantial cost. Petitioner estimates the amount at approximately $5,000, a sum which he borrowed early in the year. Respondent contends, correctly, we believe, that this estimate includes amounts otherwise deducted as farm expenses. In making this argument, however, respondent ignores the availability for these *210 expenditures of at least part of the $12,373.25 derived from farm income. Using our best judgment in the light of all the evidence, we hold that petitioner's deductible medical expense amounted to $2,700. Cohan v. Commissioner, 39 F. 2d 540 (C.A. 2, 1930). Decision will be entered under Rule 50. Footnotes
1. All section references are to the Internal Revenue Code of 1954, as in effect during the years in issue, unless otherwise noted.↩
2. SEC. 213. MEDICAL, DENTAL, ETC., EXPENSES. (a) Allowance of Deduction. - There shall be allowed as a deduction the following amounts, not compensated for by insurance or otherwise - (1) the amount by which the amount of the expenses paid during the taxable year * * * for medical care of the taxpayer, his spouse, and dependents * * * exceeds 3 percent of the adjusted gross income, and * * * (e) Definitions. - For purposes of this section - (1) The term "medical care" means amounts paid - (A) for the diagnosis, cure, mitigation, treatment, or prevention of disease, or for the purpose of affecting any structure or function of the body, * * *↩
3. See John Frier, T.C. Memo. 1971-84, 30 T.C.M. 345; Daniel S. W. Kelly, T.C. Memo. 1969-231, 28 T.C.M. 1208, reversed on another ground 440 F. 2d 307 (C.A. 7, 1971); Sidney J. Ungar, T.C. Memo. 1963-159, 22 T.C.M. 766; Est. of Jacob Hetz, Jr., a Memorandum Opinion of this Court dated Apr. 6, 1953, 12 T.C.M. 368; Rev. Rul. 58-339, 1958-2 C.B. 106↩.
4. A large portion of the cross-examination of petitioner was devoted to eliciting testimony that Betty and her children were also expected to perform farm chores, the kind of labor required for the operation of petitioner's cattle and grain farm. We do not think that respondent can be allowed to defeat petitioner's claim to a medical expense deduction on the ground that a substantial part of the services rendered by Betty and the children constitutes another type of deductible expense - i. e., an ordinary and necessary business expense deductible under section 162(a). Cf. Commissioner v. Multnomah Operating Co., 248 F. 2d 661↩ (C.A. 9, 1957), affirming a Memorandum Opinion of this Court.