DEAN E. CRAWFORD AND MARY A. CRAWFORD, PETITIONERS *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 517–76.    Filed April 20, 1978.

*James R. Ward,* for the petitioners.
*Richard A. Witkowski,* for the respondent.

OPINION

DAWSON, *Judge:* Respondent determined deficiencies in petitioners' Federal income tax as follows:

| Year | Deficiency | Year | Deficiency |
|------|-----------|------|-----------|
| 1968 | $2,730.66 | 1971 | $2,830.71 |
| 1969 | 214.22 | 1973 | 380.47 |
| 1970 | 167.96 | | |

Concessions have been made by petitioners. The only issue to be decided is whether an orchard farm purchased by petitioners qualifies for an investment credit.

This case was submitted for our decision under Rule 122, Tax Court Rules of Practice and Procedure. All of the facts have been stipulated. The stipulation of facts and the exhibits attached thereto are incorporated herein by this reference. The pertinent facts are summarized below.

Petitioners Dean E. Crawford (Dean) and Mary A. Crawford resided in Sparta, Mich., when the petition was filed in this case. They filed their joint Federal income tax returns for the years 1968, 1969, 1970, 1971, and 1973 with the Internal Revenue Service, Cincinnati, Ohio.

Crawford Orchard, Inc., was a Michigan corporation which, prior to November 4, 1970, operated as an apple and cherry orchard in Sparta, Mich. Dean's father, Clarence Crawford, Sr., owned 85 percent of the issued and outstanding capital stock of Crawford Orchard, Inc. Dean owned 5 percent and the remaining 10 percent was held in equal proportions by Dean's brothers.

The Old State Bank of Fremont (hereinafter referred to as the Bank) held a first mortgage on the property of Crawford Orchard, Inc. On November 4, 1970, the Bank foreclosed on this property and, after bidding in the amount of its mortgage, received a sheriff's deed to the property. On November 4, 1971, the period for redemption by Crawford Orchard, Inc., expired and on December 28, 1971, the Bank sold the property to petitioners. They paid the Bank $93,565.68 and received a quitclaim deed. The purchase was financed through Sparta State Bank in the amount of $73,600, with petitioners providing the remaining amount from their own funds.

Petitioners have managed the orchard farm since the date of purchase. Prior to their ownership they did not have any part in the operation of the orchard farm. Neither Crawford Orchard, Inc., nor Clarence Crawford, Sr., used the orchard farm after its purchase by petitioners.

On their 1971 Federal income tax return petitioners claimed

an investment credit for the orchard farm as "used section 38 property."[1] Respondent determined that this property did not qualify as "used section 38 property" and disallowed the investment credit in full. Thus, the carryback of unused investment credit to 1968, 1969, and 1970, and the carryforward to 1972 and 1973 were similarly disallowed.

Section 48(a)(1)(B) provides an investment credit for certain depreciable property under section 38, which classifies property as either "new" or "old." In this case, since the use of the property as an orchard did not originate with the petitioners, the property does not qualify as "new section 38 property."[2] Sec. 48(b). Thus, the issue for decision is whether petitioners satisfy the requirements for "used section 38 property" in order to qualify for the credit.

To qualify as "used section 38 property" the property must satisfy the following conditions of section 48(c)(1):

Property shall not be treated as "used section 38 property" if, after its acquisition by the taxpayer, it is used by a person who used such property before such acquisition (or by a person who bears a relationship described in section 179(d)(2)(A) or (B) to a person who used such property before such acquisition).

Respondent claims that petitioners bear a relationship to a prior user, as specified in the parenthetical language in section 48(c)(1) and in section 179(d)(2), and such relationship prohibits the taking of investment credit. Petitioners contend that they acquired the property from an independent and unrelated party and not from Crawford Orchard, Inc. It is their position that, when all the pertinent sections are considered in their entirety, the property should be treated as "used section 38 property" because the independent ownership of the Bank intervened between the ownership of Crawford Orchard, Inc., and the ownership of the petitioners. We agree with respondent.

The dispute in this case concerns the section 179(d)(2)(A) reference to prohibited relationships,[3] a section which, in turn, refers to sections 267(b) and (c) for a delineation of such

---

[1]Unless specified otherwise, section references are to the Internal Revenue Code of 1954, as amended and in effect for the years in issue.

[2]The parties agree that it is the prior and subsequent use of the property, and not the qualification of the property itself, that is in question.

[3]SEC. 179(d)(2) PURCHASE DEFINED.—For purposes of paragraph (1), the term "purchase" means any acquisition of property, but only if—

(A) the property is not acquired from a person whose relationship to the person acquiring it would

relationships. A further contingency added by section 1.48–3(a)(2)(iii), Income Tax Regs., provides that in determining whether a person bears a relationship described in section 179(d)(2)(A) to a person who used the property before its acquisition by the taxpayer, the provisions of section 1.179–3(c)(1)(i), Income Tax Regs., shall apply. This latter section states that in applying sections 267(b) and (c), "section 267(c)(4) shall be treated as providing that the family of an individual shall include only his spouse, ancestors, and lineal descendents." Moreover, property will not be considered as used by a person before its acquisition if it is used only on a casual basis by such person. Sec. 1.48–3(a)(2)(ii), Income Tax Regs. The Code defines the term "person" as including an individual, trust, estate, partnership, association, company, or corporation. Sec. 7701(a)(1).

One of the relationships described in section 267(b)(2) is that of an individual and a corporation more than 50 percent in value of the outstanding stock of which is owned, directly or indirectly, by or for such individuals. Subsection (c)(2) specifies that relationship by defining individual as one who "shall be considered as owning the stock owned, directly or indirectly, by or for his family." This language coincides with the term "family" as defined in section 267(c)(2) and as restricted by section 1.48–3(a)(2)(iii), Income Tax Regs., to be the spouse, ancestors, and lineal descendants of the prior user.

The facts of this case fall squarely within the purview of prohibited family relationship. Under the attribution rules of section 267(c)(2), as limited by the applicable provision of section 179(d)(2)(A), Dean E. Crawford would be considered as owning both his and his father's stock, or 90 percent of the outstanding stock of Crawford Orchard, Inc. Since the orchard was used, prior to its acquisition by petitioners, by Crawford Orchard, Inc., whose relationship to Dean E. Crawford, the user of the property after acquisition, is one described in section 267(b)(2), it cannot qualify as "used section 38 property." See sec. 48(c)(1).

---

result in the disallowance of losses under section 267 or 707(b) (but, in applying section 267(b) and (c) for purposes of this section, paragraph (4) of section 267(c) shall be treated as providing that the family of an individual shall include only his spouse, ancestors, and lineal descendants).

Consequently, no investment credit was allowable to the petitioners on their purchase of the orchard.

Petitioners take issue with this interpretation of prohibited relationships and argue that it is only the relationship between the taxpayer-buyer and the owner-seller which should be scrutinized. Applying this construction they contend that since the bank-seller was an independent, intervening party bearing no relationship to the petitioner-purchasers, losses would not be disallowed under section 267 and, therefore, the investment credit is allowable.

Petitioners' argument begs the question. Although the purchase was not from a prohibited family relationship referred to by section 179, and, admittedly, petitioners did not use the property prior to acquisition, the fact that the property is not "new section 38 property" places an additional restriction on the allowance of investment credit. This is overlooked by petitioners. The limitation is that the property, after its acquisition by petitioners, must not have been used by a person who bore a relationship described in section 179(d)(2)(A) or (B) to a person who used the property prior to its purchase. Petitioners misconstrue this limitation to include the purchase definition language of section 179(d)(2)(A) in determining a prohibited relationship. They ignore the relationship test between users as established by the parenthetical provision of section 48(c)(1), which is a separate and additional requirement from the "acquired by purchase" requirement of section 179(d)(2)(A).

A taxpayer cannot avail himself of the investment credit provisions without being mindful of prior use for "used section 38 property." The intent of Congress to prevent abuse by further restricting the allowance of the investment credit for "used section 38 property" is clear:

Used property (sec. 48(c)), eligible for the credit, also must be purchased after June 30, 1962, but, of course, is not property which is new in use with the taxpayer. To prevent abuse, however, there has been omitted from the term "used property," available for the credit that which (after acquisition by the taxpayer) is used by a person who used the property before such acquisition (and also that which is so used by a person who is related to a person who used the property before its present acquisition). [S. Rept. 1881, 87th Cong., 2d Sess. 15 (1962)].

To hold for petitioners would mean that every acquisition by "purchase" would be automatically free of the prohibited

relationship referred to in section 48(c)(1), a result that would subvert a declared legislative intent to limit the benefits of investment credit in an effort to avoid possible abuses.

Intervention of the Bank does not negate this result. In *Thompson v. Commissioner*, 49 T.C. 230 (1967), affd. 410 F.2d 1195 (9th Cir. 1969), the taxpayers argued that even though they had used the property prior to their reacquisition, an intervening user neutralized that fact and an investment credit for "used section 38 property" was allowable. This Court held that the fact there had been a prior user was sufficient to disallow the investment credit; that is, the use by the taxpayer-purchaser does not have to be consecutive.

Here we reject petitioners' contention that their case is substantially different because the Bank was an intervening owner and not merely an intervening user. Although the *Thompson* case dealt with the situation where both the prior user and the user after acquisition were the same person, we find that the rationale for denying the consecutive use argument is applicable where the users are prohibitively related under the parenthetical provision of section 48(c)(1).

Petitioners' argument applies only to the "acquired by purchase" requirement as defined in section 179(d)(2) because if they had acquired the property directly from Crawford Orchard, Inc., the credit would not be available, not because of a prohibited relationship, but because the property would not be "acquired by purchase." Petitioners miss the fact that it is a prior user, not owner, who is the key person for the parenthetical limitation on the application of the investment credit for "used section 38 property" under section 48(c)(1). This is true without consideration of any wrongdoing. Congress clearly speaks in terms of identifying those family relationships whose principal unity lies in the fact that they could easily frustrate the legislative intent through a straw transaction to an unrelated third party and thereby obtain the benefit of the investment credit, irrespective of any manipulation. It is this ease of avoidance that provides the underlying rationale of the parenthetical provisions of section 48(c)(1).

Accordingly, as a result of the relationship described in section 179(d)(2)(A) between Crawford Orchard, Inc., and petitioners, we sustain the respondent's determination that no investment credit is allowable to petitioners. It therefore follows that the

petitioners are not entitled to carry back or carry forward unused investment credit.

*Decision will be entered under Rule 155.*