ROSCOE D. BROWN AND LILLIAN BROWN, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Brown v. Commissioner
Docket No. 15122-79.
United States Tax Court
T.C. Memo 1982-217; 1982 Tax Ct. Memo LEXIS 523; 43 T.C.M. (CCH) 1163; T.C.M. (RIA) 82217; April 26, 1982. W. Kendall Brown and Harold N. Schneebeck, Jr., for the petitioners. Jack Forsberg, for the respondent. SHIELDS
MEMORANDUM OPINION SHIELDS, Judge:* Respondent determined a deficiency of $ 5,200 in petitioners' Federal income taxes for 1976. The sole issue for decision is whether a piece of farming equipment acquired by petitioners was "used section 38 property" within the meaning of section 48. [1] Resolution of this issue controls whether petitioners are entitled to an investment credit under section 38. *525 This case was submitted fully stipulated pursuant to Rule 122. [2] The stipulation of facts is incorporated herein by this reference. The relevant facts are summarized below. Petitioners, Lillian Brown and Roscoe D. Brown, resided in Lenox, Iowa, when they filed their petition herein. Petitioners, together with their children, owned 100 percent of Roscoe Brown Sales Co., Inc. (Sales). Sales was a dealer for Speicher Co., a maker of custom trenchers. As a dealer, Sales received used trenching equipment as trade-ins and resold that equipment. Sales also manufactured and sold its own custom trenching machinery. All trenchers that Sales owned it held as inventory for sale or resale. Petitioners were also the sole proprietors of Roscoe Brown Farm Drainage (Farm), a custom farm tiling business. Sales acquired a used 6060 Speicher trencher for $ 41,000 from an unrelated third party on June 16, 1976. This Trencher had not been owned or used by any party related to Sales, petitioners, or their children prior to its acquisition by Sales. Sales repaired the 6060 *526 Speicher trencher and added an attachment to it. Then, on October 4, 1976, petitioners purchased the trencher from Sales for $ 52,000 to use in Farm's custom tiling operation. When Sales acquired the trencher, it intended to resell it and held it as inventory. It did not use the trencher for trenching operations of any kind. The trencher had a fair market value of $ 52,000 when Sales sold it to petitioners and had a remaining useful life of seven years. In the hands of petitioners, the trencher was "section 38 property," but was not "new section 38 property," within the meaning of section 48. The question remaining to be decided therefore is whether the trencher is "used section 38 property" under sections 48(c)(1) and (3), the pertinent portions of which are: (c) USED SECTION 38 PROPERTY.-- (1) IN GENERAL.--For purposes of this subpart, the term "used section 38 property" means section 38 property acquired by purchase after December 31, 1961, which is not new section 38 property. * * * (3) DEFINITIONS.--For purposes of this subsection-- (A) PURCHASE.--The term "purchase" *527 has the meaning assigned to such term by section 179(d)(2). The respondent contends that the trencher was not "acquired by purchase" and consequently does not constitute used section 38 property within the meaning of section 48(c)(1). He supports this conclusion by carefully following the referrals from section 48(c) to section 179(d)(2) and then to section 267. First, he looks to the definition of purchase as it is used in section 48(c)(1). In this connection, section 48(c)(3)(A) states that in section 48(c)(1) the term is to have the meaning assigned to it by section 179(d)(2). the respondent next notes that under section 179(d)(2) a purchase includes any acquisition of property, but only if the property is "not acquired from a person whose relationship to the person acquiring it would result in the disallowance of losses under section 267." Turning to section 267(b)(2), he points out that a loss would be disallowed if it occurred between an individual and a corporation in which more than 50 percent in value of the outstanding stock is owned directly or indirectly by or for such individual. Thus, he concludes that petitioners could not have "acquired by purchase" the trencher *528 from Sales within the meaning of section 48(c)(1) because they owned more than 50 percent of the stock in Sales, and, therefore, the trencher was not "used section 38 property." Petitioners argue that respondent's technical reading of the "acquired by purchase" language is improper because it is clearly contrary to the legislative history and the statutory purpose of the investment credit. The credit was enacted to encourage businesses to modernize their operations and to invest in capital improvements. [3] According to petitioners, the only explicit limitation Congress articulated with respect to the credit for investments in used property was that two persons could not receive the credit when there had been, in reality, only one investment. To this end, Congress stated that: To prevent abuse, however, there has been omitted from the term "used property," available for the credit that which (after acquisition by the taxpayer) is used by a person who used the property before such acquisition (and also that which is so used by a person who is related to a person who used the property *529 before its present acquisition). [4]
Petitioners stress that, after they acquired the trencher, it was never used by one who had used it before they acquired it, nor was it used by one who was related to one who had so used it. They point out that respondent seeks to deny them an investment credit merely because they acquired it from Sales, a related party. They assert that such a limitation on the credit for investments in used section 38 property is nowhere mentioned in the legislative history. Moreover, they observe, and respondent agrees, that if they had purchased "new section 38 property" from Sales, they would have received an investment credit under section 48(b) even though Sales was a related party. Thus, petitioners contend that the statutory language of "acquired by purchase" should be read so as to bar an investment credit only if a taxpayer acquires section 38 property from a related party who has previously used such property. We observe, at the outset, that two cases of this Court have suggested that *530 section 48(c) requires a two-fold test to determine whether section 38 property is "used section 38 property," and that the "acquired by purchase" language comprises one part of this determination. See Crawford v. Commissioner,70 T.C. 46 (1978); Smyers v. Commissioner,57 T.C. 189 (1971). [5] However, as petitioners observe, these cases did not consider whether the technical meaning of "acquired by purchase" entirely fails to satisfy the legislative history and statutory purpose of the investment credit. Thus, although these cases give us guidance in our analysis, they do not control the outcome of the present case. As a general rule of statutory construction, we may use a statute's legislative history to interpret the wording of the statute if: (1) the wording is ambiguous; or (2) the wording is clear but nonetheless completely at variance with the statute's purpose, as articulated in the legislative history. See, e.g., United States v. Public Utilities Commission of California,345 U.S. 295, 315 (1953); *531 Johansen v. United States,343 U.S. 427, 432 (1952); Longshoremen v. Juneau Spruce Corp.,342 U.S. 237, 243 (1952); Carasso v. Commissioner,34 T.C. 1139, 1142 (1960), affd. 292 F.2d 367 (2d Cir. 1961), cert. denied 369 U.S. 874 (1962). In this case, the words of the statute are clear, not ambiguous. The term "acquired by purchase" has a meaning linked to other sections of the Code which, in its technical usage, operates to preclude petitioners from receiving an investment credit. Thus, we may not rely on the legislative history of the investment credit to alter the wording of section 48(c)(1) or to control the outcome of this case, unless we find that the "acquired by purchase" requirement is completely at odds with the legislative history of the investment credit. Petitioners emphasize that the Committee Reports use expansive language to describe the scope of the investment credit, [6] suggesting that it is to be made available liberally unless specific exceptions apply. They also argue that a technical reading of the "acquired by purchase" language is contrary to Congress' discussion of "used section *532 38 property." [7] We disagree. The "acquired by purchase" language is not contrary to Congress' legislative purpose simply because it restricts transactions between related taxpayers. In several other sections, [8] Congress has recognized that related parties may seek tax advantages by failing to deal with one another at arm's length and has restricted transactions between them accordingly. [9] Thus, it would be logical for Congress to conclude, with little or no comment in its reports, that similar abuses [10] could occur with respect to the investment credit in transactions between related parties. *533 Furthermore, we have examined the Committee Reports relating to the enactment of the investment credit on which petitioner relies. [11] The Reports specifically indicate that the investment credit is not available to a taxpayer who acquires "used section 38 property" from a related party. [12] In particular, they state: Definitions
Subparagraph (A) of section 48(c)(3) provides that the principles of section 179(d)(2) of the code are to be applied in determining whether the property has been acquired by purchase. Thus, for example, used section 38 property is not acquired by purchase if it is acquired from a person whose relationship to the person acquiring it would result in the disallowance of a loss under section 267[.] * * * H. Rept. No. 1447, 87th Cong., 2d Sess. (1962), 1962-3 C.B. 405, 521-22. Thus, although Congress may have failed to discuss specifically the "acquired by purchase" requirement when it considered the purpose of *534 the investment credit and "used section 38 property," Congress nonetheless explicitly considered the meaning of "acquired by purchase" when defining "used section 38 property." We conclude that the "acquired by purchase" language of section 48(c)(1) is entirely consistent with the legislative history of the investment credit. Accordingly, the meaning of "acquired by purchase" is determined by the definition of "purchase" under section 179(d)(2). Thus, petitioners did not acquire the used 6060 Speicher trencher from Sales by "purchase" within the meaning of section 48(c)(3)(A), and, therefore, they are not entitled to an investment credit from the acquisition. Decision will be entered for the respondent.
Footnotes
*. This case was assigned to Judge Cynthia Holcomb Hall, who subsequently resigned from the Court. By order of the Chief Judge dated February 8, 1982, the case was reassigned to Judge Perry Shields↩ for disposition. 1. All section references are to the Internal Revenue Code of 1954, as amended, during the year in issue, unless otherwise provided.↩
2. All references to a Rule are to the Tax Court Rules of Practice and Procedure, unless otherwise provided.↩
3. See, e.g., S. Rept. No. 1881, 87th Cong., 2d Sess. (1962), 1962-3 C.B. 707↩.
4. S. Rept. No. 1881, 87th Cong., 2d Sess. (1962), 1962-3 C.B. 707↩, 721.
5. See also Hickman v. Commissioner,T.C. Memo. 1972-208↩.
6. H. Rept. No. 1447, 87th Cong., 2d Sess. (1962), 1962-2 C.B. 405↩. 7. See H. Rept. No. 1447, supra note 6; S. Rept. No. 1881, supra↩ note 3.
8. See, e.g., sec. 482 (allocation among taxpayers of income and deductions); sec. 1239 (gain from sale of property among related taxpayers treated as ordinary gain); sec. 267 (disallowance of losses between related parties). ↩
9. For instance, they may sell property for other than its fair market value, they may seek to control timing of gain or losses, or they may part with title to and control of property on paper only. See generally McWilliams v. Commissioner,331 U.S. 694 (1947) (discussing tax avoidance schemes practiced by related taxpayers); Brittingham v. Commissioner,66 T.C. 373 (1976), affd. 598 F.2d 1375↩ (5th Cir. 1979) (discussing artificial income shifting among different persons with a common purpose or goal). 10. We do not suggest that petitioners have attempted to use the credit abusively.↩
11. H. Rept. No. 1447, supra↩ note 6. 12. See H. Rept. No. 1447, 87th Cong., 2d Sess. (1962), 1962-3 C.B. at 521-22; S. Rept. No. 1881, 87th Cong., 2d Sess. (1962), 1962-3 C.B. at 864.↩